OPINION
{¶ 1} Appellant, Rashad Cherry, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, which adjudicated him delinquent for committing aggravated robbery, a felony of the first degree; robbery, a felony of the second degree; and robbery, a felony of the third degree. For the following reasons, we affirm.
 {¶ 2} According to the state's evidence, on January 27, 2003, at approximately 9:15 p.m., Mary Ellen Kahn stopped at a Big Bear grocery store on Whittier Avenue in Columbus, Ohio, to pick up a few items. While Kahn was shopping, Kahn noticed that several young men who were dressed alike in black clothing were also in the store.
 {¶ 3} As Kahn was loading groceries into her trunk, the young men who were dressed alike in black clothing approached Kahn. Appellant then stepped forward, pointed a gun at Kahn's head, and stated, "Give me the damn purse." (Tr. 7, 10-11.) Appellant grabbed the purse. When Kahn saw the gun barrel, Kahn released her grip on the purse and ducked because she was fearful that appellant would shoot her. After the robbery, the group of young men ran in a southeast direction toward Whittier Avenue and Kahn ran into the store and yelled for assistance.
 {¶ 4} At the time of the robbery, appellant stood within arm's length of Kahn, approximately three or four feet away from her. Appellant wore a black hood and Kahn could only see appellant's face and eyes. According to Kahn, appellant appeared relatively young, approximately 14 years old, and had medium-brown skin. Kahn did not notice any facial hair, glasses, or distinctive features. According to Kahn, the area where the robbery occurred was sufficiently lit so that Kahn had a very good look at appellant, and she observed appellant for approximately 30 seconds.
 {¶ 5} Police responded to the scene within approximately 10 to 15 minutes. According to Kahn, a police officer informed her that officers had apprehended some suspects. Kahn accompanied police, who drove Kahn to three different locations to provide Kahn with an opportunity to identify any of the suspects.
 {¶ 6} At the first location, police brought two suspects in front of the car. Kahn informed police that she was "pretty sure" that appellant, the taller of the two suspects and who at that time had a white hood, was her assailant. (Tr. 15.) At trial, Kahn recalled that she told police, "I believe that's him." (Tr. 16.) According to Kahn, an officer then stated, "`Well, we have two other suspects. Let's take a look at them as well.'" Id.
 {¶ 7} After Kahn saw appellant the first time, she informed police that she wanted to confirm that she had identified the correct suspect. Police then took Kahn back to the grocery store where she reviewed the store's videotape. After reviewing the videotape, Kahn realized the group of young men that she had seen in the store had followed her out of the store. Kahn could not see the boys' faces on the videotape.
 {¶ 8} Later, however, because Kahn wanted to get a closer look at appellant, she asked for a second opportunity to view appellant. After viewing appellant a second time, Kahn positively identified appellant as the person who robbed her at gunpoint. At this second viewing, police pulled a dark hood, not a white hood, over appellant's head. Because Kahn had observed appellant with both a white hood and a black hood, Kahn theorized that appellant wore two layers of clothing at the time of the robbery and appellant's apprehension. Kahn was not able to positively identify any other individuals.
 {¶ 9} Following the robbery, Kahn's purse was recovered in an alley near the grocery store. All items in the purse were eventually returned, except for approximately $75 in cash.
 {¶ 10} On January 28, 2003, police filed a complaint in juvenile court, alleging aggravated robbery, a violation of R.C.2911.01(A)(1), and a felony of the first degree; robbery, a violation of R.C. 2911.02(A)(1), and a felony of the second degree; and robbery, a violation of R.C. 2911.02(A)(3), and a felony of the third degree. That same day, pursuant to R.C.2152.12(B) and Juv.R. 30, the state also moved the juvenile court to relinquish jurisdiction of the case to the Franklin County Court of Common Pleas, General Division, so that appellant could be prosecuted as an adult.
 {¶ 11} After several continuances, on April 16, 2003, the juvenile court held a hearing to consider whether probable cause existed that appellant had committed the alleged crimes and to consider the state's motion to relinquish jurisdiction. Finding probable cause existed, the juvenile court ordered appellant to submit to an alcohol and drug assessment.
 {¶ 12} On April 22, 2003, the juvenile court amended count one of the complaint "to include displaying of a firearm and a category 2 offense as stipulated to by all parties." (Judgment entry filed April 22, 2003.) The juvenile court continued the matter for a determination concerning appellant's amenability to rehabilitation within the juvenile justice system.
 {¶ 13} On May 1, 2003, finding appellant was amenable to rehabilitation as a juvenile, the juvenile court denied the state's motion for relinquishment of jurisdiction. In its entry of May 1, 2003, the juvenile court ordered some language to be deleted from appellant's alcohol and drug assessment, and the court admitted the amended alcohol and drug assessment along with a bindover packet into evidence.
 {¶ 14} On May 7, 2003, the juvenile court conducted an adjudicatory hearing. Following the adjudicatory hearing, the juvenile court proceeded immediately to disposition of the matter. At the adjudicatory hearing, the sole witness for the prosecution was Kahn who testified about the robbery. The state did not call any police officers to testify about appellant's apprehension. Except for Kahn's testimony and a map, no other evidence was introduced by the state at the hearing.
 {¶ 15} The juvenile court adjudicated appellant as a delinquent minor child and found appellant had committed aggravated robbery, a violation of R.C. 2911.01(A)(1), and a felony of the first degree; robbery, a violation of R.C.2911.02(A)(1), and a felony of the second degree; and robbery, a violation of R.C. 2911.02(A)(3), and a felony of the third degree. Finding placement of appellant in the family home would have been contrary to appellant's welfare, the juvenile court committed appellant to the legal custody of the Ohio Department of Youth Services and sentenced appellant to a minimum term of one year not to exceed appellant's attainment of the age of 21 years old. In addition, for the use of a firearm in the commission of the offenses, the juvenile court sentenced appellant to a one-year term that was to be served consecutively to the other period of commitment.
 {¶ 16} On May 21, 2003, appellant timely appealed from the juvenile court's judgment of May 7, 2003. Concurrent with the filing of appellant's notice of appeal, appellant's trial counsel moved for appointment of appellate counsel. On June 19, 2003, this court appointed the Franklin County Public Defender to represent appellant in this appeal.
 {¶ 17} Appellant assigns the following errors:
 ASSIGNMENT OF ERROR NUMBER ONE
The trial court erred when it entered judgment against the defendant when the evidence presented on behalf of the state was insufficient to sustain this finding by proof beyond a reasonable doubt and the judgment was against the manifest weight of the evidence presented.
 ASSIGNMENT OF ERROR NUMBER TWO
The defendant did not receive effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article 1, of the Ohio Constitution.
 {¶ 18} Pursuant to R.C. 2501.02, an appellate court has jurisdiction concerning an appeal from a juvenile court judgment that finds a child to be delinquent. See, also, In re Hartman
(1983), 2 Ohio St.3d 154, syllabus.
 {¶ 19} Appellant's first assignment of error asserts the judgment is not supported by sufficient evidence and is against the manifest weight of the evidence.
 {¶ 20} To the extent appellant challenges his conviction as not supported by sufficient evidence, we construe the evidence in favor of the prosecution and determine whether such evidence permits any rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds inState v. Smith (1997), 80 Ohio St.3d 89; State v. Conley
(Dec. 16, 1993), Franklin App. No. 93AP-387. See, also, In reTiber, 154 Ohio App.3d 360, 2003-Ohio-5155, at ¶ 11 (observing that "although the sufficiency test set forth in Jenks is still good law, the holding that weight and sufficiency use the same test is no longer good law").PRIVATE
 {¶ 21} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the jury's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra. See, also, State v.Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Tibbs v.Florida (1982), 457 U.S. 31, 42, 102 S.Ct. 2211 ("When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting evidence"). Determinations of credibility and weight of the testimony are primarily for the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 22} Here, in his first assignment of error, appellant contends the eyewitness identification evidence was obtained through a suggestive procedure and should have been excluded due to unreliability.
 {¶ 23} As a preliminary matter, because appellant failed to object to Kahn's testimony and to her eyewitness identification, appellant has waived all arguments except plain error. State v.Williams (1977), 51 Ohio St.2d 112, paragraph one of the syllabus, vacated in part on other grounds (1978), 438 U.S. 911,98 S.Ct. 3137; Crim.R. 52(B). Furthermore, plain error "is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v.Long (1978), 53 Ohio St.2d 91, paragraph three of the syllabus. See, also, State v. Barnes (2002), 94 Ohio St.3d 21, 27
(discussion of "plain error").
 {¶ 24} Although a "showup" identification is inherently suggestive, State v. Martin (July 31, 2001), Franklin App. No. 99AP-150, "`[t]here is no prohibition against viewing a suspect alone in what is called a "one-man showup" when this occurs near the time of the alleged criminal act; such a course does not tend to bring about misidentification but rather tends under some circumstances to insure accuracy.'" Id. quoting State v.Madison (1980), 64 Ohio St.2d 322, 332, citing Bates v.United States (C.A.D.C. 1968), 405 F.2d 1104, 1106.
 {¶ 25} Previously, this court has observed:
To set aside [a] defendant's conviction on the basis that the admission of eyewitness identification violated due process, defendant must show the identification procedure was "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v.United States (1968), 390 U.S. 377, 384; State v. Butler (1994),97 Ohio App.3d 322, 325. It is the "likelihood of misidentification which violates a defendant's right to due process * * *." Neilv. Biggers (1972), 409 U.S. 188, 198; State v. Jells (1990),53 Ohio St.3d 22, 27. The factors to consider when" evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Neil, supra, at 199. * * *
Martin, supra.
 {¶ 26} Here, Kahn viewed appellant's face for approximately 30 seconds when he pointed a gun toward her head; the area where the robbery occurred was sufficiently lit so that Kahn had a very good look at appellant; only a short period of time elapsed, approximately 10 to 15 minutes, between the robbery and Kahn's initial confrontation with appellant whereupon she provisionally identified appellant; and only a relatively short period of time elapsed after the robbery, approximately 30 to 45 minutes, whereupon Kahn positively and with certainty identified appellant as the person who robbed her at gunpoint. (Tr. 21-22.)
 {¶ 27} Furthermore, because Kahn could not see any facial features when she reviewed the store's videotape, we do not find Kahn's viewing of the videotape before Kahn's second identification of appellant rendered Kahn's second identification to be impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
 {¶ 28} Therefore, based upon these facts and based upon the factors in Neil v. Biggers (1972), 409 U.S. 188, 199-200,93 S.Ct. 375, we conclude it was not plain error for the trial court to admit Kahn's eyewitness identification.
 {¶ 29} Moreover, we are not persuaded by appellant's contentions that the evidence presented at trial was insufficient and the judgment was against the manifest weight of the evidence.
 {¶ 30} Pursuant to R.C. 2911.01 (aggravated robbery):
(A) No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it;
(2) Have a dangerous ordnance on or about the offender's person or under the offender's control;
(3) Inflict, or attempt to inflict, serious physical harm on another.
* * *
(C) Whoever violates this section is guilty of aggravated robbery, a felony of the first degree.
(D) As used in this section:
(1) "Deadly weapon" and "dangerous ordnance" have the same meanings as in section 2923.11 of the Revised Code.
 {¶ 31} Under R.C. 2911.02 (robbery):
(A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
(1) Have a deadly weapon on or about the offender's person or under the offender's control;
(2) Inflict, attempt to inflict, or threaten to inflict physical harm on another;
(3) Use or threaten the immediate use of force against another.
(B) Whoever violates this section is guilty of robbery. A violation of (A)(1) or (2) of this section is a felony of the second degree. A violation of division (A)(3) of this section is a felony of the third degree.
(C) As used in this section:
(1) "Deadly weapon" has the same meaning as in section 2923.11
of the Revised Code.
(2) "Theft offense" has the same meaning as in section 2913.01
of the Revised Code.
See, also, R.C. 2923.11(A) (defining "deadly weapon" as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon");[1] R.C. 2913.01(K) (definition of "theft offense").[2]
 {¶ 32} Here, according to Kahn's sworn testimony, appellant displayed a gun; appellant pointed the gun at her head thereby threatening the immediate use of force; and without privilege appellant removed Kahn's purse from her possession.
 {¶ 33} Furthermore, although presumably the state could have admitted into evidence appellant's clothing that appellant was wearing on the day of his apprehension, or the state could have subpoenaed police officers to testify about appellant's clothing at the time of appellant's apprehension, we do not conclude the evidence presented at trial concerning a white hood and a black hood constitutes reasonable doubt or renders Kahn's identification unreliable. See, e.g., R.C. 2901.05(D) ("[Reasonable doubt] is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. `Proof beyond a reasonable doubt' is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of his own affairs"). See, also, R.C. 2151.35(A) (requiring proof beyond a reasonable doubt for a finding of delinquency).[3]
 {¶ 34} On direct examination, Kahn testified:
Q. [By prosecutor] Okay. All right. Well, when you said you were pretty sure it was him [at the first identification], what — what made you think that? Did you —
A. Because I recognized his — they — he actually — he was — they — they brought — they brought a hood up. He had a white — they pulled up a white hood, which he did not have on when — I mean the person that robbed me wasn't wearing a white hood, but it — the face — I looked at the face because he was looking right into my eyes when — you know, because he was about the same height. So, I just thought it — I mean, the face, just the eyes and the nose, because I was looking, staring right at him, that's why I thought it was him.
(Tr. 16.)
 {¶ 35} Later, on redirect examination, Kahn testified:
Q. [By prosecutor] Okay. And, Ms. Kahn, let's just clarify the clothing issue one more time. The first time you saw him was when he approached you with the gun?
A. Right.
Q. And he had on a —
A. A dark — he had a dark hood pulled up —
Q. A dark —
A. — around his face so that all that I could see was his face.
Q. Okay. So the hood was very tight —
A. All right. So he was he —
Q. — around his face?
A. Pardon?
Q. So the hood was pretty tight around his face? There wasn't a lot —
A. It — it — it wasn't teed [sic], but it was like pulled way forward so that you could only just see the face.
Q. Okay. And then the second time that you saw him was that time that — near Bruck Street, at East Whittier and Reinhard?
A. With the police, that's right. And when they took him out of the police car he did not have any hood on at all.
Q. Okay.
A. They brought him in front of the car and then the police officer pulled up a white hood over his — you know, up over his head.
Q. Okay. So when he pulled up the white hood, did he have on just a white sweatshirt then or —
A. No, he was — he was all dressed in black. They just pulled — he must have had the black sweatshirt and hooded sweatshirt over the white. The only thing that I can figure is that he had at least two layers of clothing on —
Q. Okay.
A. — because he was still all dressed in black, they just pulled this white hood up.
Q. Did the officer then lift a black hood at all —
A. No.
Q. — or just the white?
A. Not — I didn't see — I didn't — the police didn't put the black hood up until I saw him on Mound Street, then they pulled up the black hood.
Q. Okay. Okay. Thank you, Ms. Kahn.
(Tr. 36-38.)
 {¶ 36} As stated on direct examination, Kahn identified appellant based upon her recognition of appellant's face, rather than upon the color of the hood that appellant wore. We conclude Kahn's testimony, if believed, is of such character that an ordinary person would be willing to rely and act upon it in the most important of his or her own affairs. See, also, State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus (holding that the determination of the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact).
 {¶ 37} In addition, Kahn's conflicting recollections concerning the number of young men or boys who were involved the robbery (see Tr. 27), does not render appellant's conviction against the manifest weight of the evidence or sufficiency of the evidence.
 {¶ 38} In State v. Craig (Mar. 23, 2000), Franklin App. No. 99AP-739, appeal denied, 90 Ohio St.3d 1405, this court observed:
As this court has previously stated, "[w]hile the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass [(1967),10 Ohio St.2d 230], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence."State v. Nivens (May 28, 1996), Franklin App. No. 95APA-1236, unreported. It was within the province of the jury to make the credibility decisions in this case. See State v. Lakes (1964),120 Ohio App. 213, 217 * * * ("[i]t is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness").
 {¶ 39} Therefore, construing the evidence in favor of the state, we conclude the evidence, if believed, permits any rational trier of fact to find the essential elements of aggravated robbery and robbery beyond a reasonable doubt. Furthermore, we conclude the verdict of the trial court, as the trier of fact, is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. See, e.g., State v. Epley (Sept. 17, 1998), Franklin App. No. 97APA12-1611 (holding that an eyewitness identification was not against the manifest weight of the evidence when a crime victim was face-to-face with the defendant; the victim was less than one foot way from the robber; the entire incident took less than 30 seconds; the victim only had approximately 10 to 15 seconds to observe the robber; and the victim only saw the robber from the eyebrows down because the robber was wearing a hat).
 {¶ 40} Accordingly, appellant's first assignment of error is overruled.
 {¶ 41} Appellant's second assignment of error asserts appellant was denied effective assistance of counsel.
 {¶ 42} The Sixth Amendment to the United States Constitution, which is made applicable to the states through theFourteenth Amendment to the United States Constitution, guarantees the right of effective assistance of counsel to a defendant in felony cases. Gideon v. Wainwright (1963), 372 U.S. 335, 83 S.Ct. 792;McMann v. Richardson (1970), 397 U.S. 759, 771, 90 S.Ct. 1441, fn. 14; United States v. Cronic (1984), 466 U.S. 648, 653-656,104 S.Ct. 2039; Scott v. Illinois (1979), 440 U.S. 367,373-374, 99 S.Ct. 1158 ("hold[ing] that the Sixth andFourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense"). See, also,State v. Milligan (1988), 40 Ohio St.3d 341, paragraph one of the syllabus, approving and following Ford v. State (1929),121 Ohio St. 292, 295 (holding that "[t]he right to counsel afforded by Section 10, Article I of the Ohio Constitution is comparable to but independent of similar guarantees provided by theSixth Amendment to the United States Constitution").
 {¶ 43} The burden of proving ineffective assistance of counsel is upon a defendant. State v. Smith (1985),17 Ohio St.3d 98, 100. Furthermore, "trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance." State v. Sallie (1998),81 Ohio St.3d 673, 675, reconsideration denied,82 Ohio St.3d 1444, citing State v. Thompson (1987), 33 Ohio St.3d 1, 10.
 {¶ 44} As this court stated in State v. Howard, Franklin App. No. 03AP-453, 2003-Ohio-6941, at ¶ 16:
* * * To demonstrate ineffective assistance of counsel, the defendant must meet a two-part test. Strickland v. Washington
(1984), 466 U.S. 668, 686, 104 S.Ct. 2052. * * * Initially, to demonstrate ineffective assistance of counsel, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by theSixth Amendment. Id. The defendant then must show that counsel's deficient performance prejudiced the defense. Id. This requires showing that counsel's errors "were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. In effect, defendant must show that there is a "reasonable probability" that, but for counsel's error, the result of the trial would have been different. Id. at 694. Unless the defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable.
 {¶ 45} Here, appellant argues that because the identification procedure was suggestive and lacked reliability, trial counsel's failure to move to suppress Kahn's identification of appellant constitutes ineffective assistance of counsel.
 {¶ 46} Notwithstanding appellant's contention that the identification procedure was suggestive and lacked reliability, here, applying the Neil factors, we do not find the identification procedure was unduly suggestive or lacked reliability. In this case, Kahn viewed appellant's face for approximately 30 seconds when appellant pointed a gun toward her head; the area where the robbery occurred was sufficiently lit so that Kahn had a very good look at appellant; only a short period of time elapsed, approximately 10 to 15 minutes, between the robbery and Kahn's initial confrontation with appellant; and a relatively short period of time elapsed after the robbery, approximately 30 to 45 minutes, whereupon Kahn positively and with certainty identified appellant as the person who held a gun toward her head and robbed her.
 {¶ 47} Furthermore, because Kahn could not see any facial features when she reviewed the store's videotape, we do not find Kahn's viewing of the videotape before Kahn's second identification of appellant rendered Kahn's second identification to be impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.
 {¶ 48} Consequently, because "`[a] defendant does not state a claim for ineffective assistance of counsel unless his attorney acted unreasonably given the facts of the case, and the unreasonable conduct was prejudicial to the defense[,]'" Statev. Lee, Franklin App. No. 02AP-1340, 2003-Ohio-4059, at ¶ 13, appeal not allowed, 100 Ohio St.3d 1487, quoting State v. Mills
(1992), 62 Ohio St.3d 357, 370, certiorari denied, 505 U.S. 1227,112 S.Ct. 3048, and because "[c]ounsel need not raise meritless issues," Lee, at ¶ 13, citing State v. Hill (1996),75 Ohio St.3d 195, certiorari denied, 519 U.S. 895, 117 S.Ct. 241, appellant cannot prevail with his claim that trial counsel's failure to move to suppress Kahn's identification constitutes ineffective assistance of counsel.
 {¶ 49} Appellant further argues that trial counsel's failure to inquire about whether probable cause existed to detain appellant also constitutes ineffective assistance of counsel. Appellant's argument is based upon speculation and presumes that probable cause may not have existed. However, there is no evidence in the record to support such a presumption. To find support for a contention that trial counsel was ineffective for failing to inquire about probable cause would require review of evidence outside the record about the circumstances of the police detainment of appellant. Such a review is impermissible on appeal. See Napper v. Napper, Allen App. No. 1-02-82, 2003-Ohio-2719, at ¶ 5 ("[u]pon review, appellate courts are confined, pursuant to App.R. 12(A), to the record before it as defined in App.R. 9(A). Stated otherwise, an appellate court's review is strictly limited to the record that was before the trial court, no more no less"). (Footnote omitted.)
 {¶ 50} Because evidence to support appellant's contention that trial counsel was ineffective because he did not inquire whether police had probable cause to detain appellant is not within the record, we find that on appeal appellant cannot support a contention that trial counsel was ineffective for failing to raise the issue of probable cause. Therefore, appellant's contention that trial counsel was ineffective because he did not inquire about probable cause is not persuasive.
 {¶ 51} Accordingly, appellant's second assignment of error is overruled.
 {¶ 52} Consequently, having overruled appellant's two assignments of error, the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
Bryant and Sadler, JJ., concur.
[1] Am.Sub.H.B. No. 12 amended R.C. 2923.11 effective April 8, 2004. Division (A) was unaffected by this amendment.
[2] R.C. 2913.01 was amended by Am.Sub.S.B. No. 82 effective February 2, 2004. Division (K) was unaffected by this amendment.
[3] R.C. 2151.35(A) was amended by Am.Sub.H.B. No. 400 effective April 3, 2003. The standard of proof beyond a reasonable doubt for a finding of delinquency was unchanged by this amendment.