OPINION
{¶ 1} Appellant Saundra Vinson appeals her conviction, for kidnapping, in the Stark County Court of Common Pleas. The following facts give rise to this appeal.
 {¶ 2} On the evening of November 27, 2002, Ira Collier and his fiancée, Catherine Tavares, planned to spend the night at Collier's grandmother's house to prepare for Thanksgiving the next day. At approximately 11:15 p.m., they stopped by their residence, on Millvale Avenue, in Plain Township, to retrieve a few items. Collier went into the residence first and Tavares followed. Their eighteen-month-old son, Jaahlen Collier, remained in the couple's vehicle, a 1995 Oldsmobile Aurora, with the engine running and the doors unlocked. The baby was asleep, in his car seat, when Collier and Tavares went into their residence.
 {¶ 3} As Collier and Tavares left their residence, they noticed their vehicle backing out of the driveway. Collier immediately ran toward the vehicle, shouting, while Tavares returned to the residence to telephone the police. Collier chased the vehicle and was only a few feet from the driver's door when he shouted at the driver that his son was in the vehicle and asked the driver to stop. The driver did not stop and Collier chased the vehicle as far as he could. He observed the vehicle stop at a stop sign and turn left onto Lesh Avenue.
 {¶ 4} Sergeant Maskaluk, from the Stark County Sheriff's Department, arrived on the scene and issued an all-terminals bulletin through LEADS to all law enforcement agencies in the State of Ohio. Sergeant Maskaluk also issued an "Amber Alert" throughout northeastern Ohio. Sergeant Maskaluk speculated that someone released from the Stark County Jail, which is located close to Collier's and Tavares's residence, may be involved.
 {¶ 5} On November 28, at approximately 2:45 a.m., Edward Sturkey, a firefighter/paramedic with the City of Akron, was watching television at the fire station located on Dodge Avenue when he heard someone knocking on the door and ringing the doorbell. Sturkey and his partner opened the door and observed appellant standing in the doorway, holding a baby out to them. Sturkey took the baby. Appellant told Sturkey that someone stole a car in Canton and gave her the baby. Sturkey noticed an odor of alcohol about appellant's person. Appellant thereafter fled on foot.
 {¶ 6} Sturkey contacted the Stark County Sheriff's Department pursuant to the "Amber Alert." Once the baby was recovered, the sheriff's department narrowed its investigation to recently released prisoners who live in the Akron area. Catherine Abel, a nurse at the jail, remembered seeing appellant, in the lobby, at approximately 10:00 p.m. Appellant was frustrated because she could not find a ride home. A deputy from the sheriff's department contacted Sturkey the next day and Sturkey identified appellant as the woman who dropped off the baby. Appellant was subsequently arrested.
 {¶ 7} On January 22, 2003, the Stark County Grand Jury indicted appellant on one count of kidnapping and one count of grand theft of a motor vehicle. On the date of trial, appellant pled guilty to the offense of grand theft of a motor vehicle and waived her right to a trial by jury on the count of kidnapping. The case proceeded to a bench trial. At the close of the state's case, appellant moved for a judgment of acquittal arguing the state did not establish that appellant knew the baby was in the car when she took it and that there was no evidence of circumstances that created a substantial risk of physical harm to the baby. The trial court overruled appellant's motion.
 {¶ 8} The trial court found appellant guilty of the charge of kidnapping and sentenced her to twelve months, in prison, on the grand theft of a motor vehicle charge and five years on the charge of kidnapping. Appellant timely filed a notice of appeal and sets forth the following assignment of error for our consideration:
 {¶ 9} "I. There was insufficient evidence to find the appellant guilty of kidnapping and her conviction was against the manifest weight of the evidence."
 "Standard of Review" {¶ 10} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. State v. Jenkins
(1991), 61 Ohio St.3d 259. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175.
 {¶ 11} It is based upon these standards that we review appellant's sole assignment of error.
 I {¶ 12} In her sole assignment of error, appellant maintains there is insufficient evidence to find her guilty of kidnapping and her conviction is against the manifest weight of the evidence. We disagree.
 {¶ 13} The trial court found appellant guilty of kidnapping, which is a violation of R.C. 2905.01(B)(1). This statute provides:
 {¶ 14} "(B) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim, or in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim:
 {¶ 15} "(1) Remove another from the place where the other person is found;
 "* * *" {¶ 16} Appellant contends her conviction is against the sufficiency of the evidence because there is insufficient evidence that she knowingly committed the offense. Appellant also maintains the removal of the baby was not done under circumstances that created either a substantial risk of serious physical harm or circumstances that caused physical harm to the baby.
 {¶ 17} R.C. 2901.22(B) defines the term "knowingly" as follows:
 {¶ 18} "(B) A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 19} Appellant argues the evidence does not support the conclusion that she acted knowingly when she removed the baby from his parent's residence. Appellant maintains the following facts support her argument. First, the vehicle had dark tinting on the windows making it difficult to look into the vehicle. Second, there was dry cleaning and other items in the backseat, which had been pushed toward the baby's car seat since a person had previously been sitting behind the front passenger seat. Third, appellant relies on her own testimony which she claims establishes she did not know the baby was in the car. Appellant merely glanced in the backseat and saw it full of clothing and other items. Appellant did not see nor hear the baby because he was sleeping. The first time appellant claims she noticed the baby was after she stopped at her sister's house in Akron.
 {¶ 20} Upon review of the evidence presented in this matter, we conclude the state presented sufficient evidence to establish that appellant knew the baby was in the backseat of the vehicle. We base our conclusion on the following evidence presented at trial. Appellant backed a short distance out of the driveway and the baby was in his car seat, facing forward, directly behind the driver's seat. Although there were other items in the backseat of the vehicle, nothing obscured the view of the baby's car seat from the front of the vehicle. Further, as appellant backed out of the driveway, Mr. Collier ran up to the driver's side of the vehicle and shouted, "My son is in the car. Can you stop? My son is in the car." Tr. at 30.
 {¶ 21} Appellant also argues the evidence is not sufficient to establish that she took the baby under circumstances that created a substantial risk of serious physical harm or circumstances that caused physical harm to the baby. The term "substantial risk" is defined as "* * * a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8). The term "physical harm" is defined as "* * * any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C.2901.01(A)(3) Finally, "serious physical harm" is defined, in R.C. 2901.01(A)(5), as any of the following:
 {¶ 22} "(a) Any mental illness or condition or such gravity as would normally require hospitalization or prolonged psychiatric treatment;
 {¶ 23} "(b) Any physical harm that carries a substantial risk of death;
 {¶ 24} "(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
 {¶ 25} "(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, substantial disfigurement;
 {¶ 26} "(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."
 {¶ 27} Appellant contends the state presented no evidence that she took the baby under circumstances that caused physical harm to him. In fact, the evidence established that the baby was unharmed when the incident was over. Appellant also maintains she did not take the baby under circumstances that created a substantial risk of serious physical harm to the baby. In proving this element, the state focused on the fact that appellant's driver's license was suspended and appellant had an odor of alcohol on her person when she gave the baby to firefighter Sturkey. Appellant claims these two facts are insufficient to establish this element of kidnapping because there was no evidence presented that she was under the influence of alcohol when she took the baby to the fire station or that she operated the vehicle in a reckless manner.
 {¶ 28} We conclude appellant did act under circumstances that created a substantial risk of serious physical harm. Appellant stole a vehicle and drove to Akron under a suspended license. Appellant kept the baby with her for over three hours even though the trip from Canton to the fire station takes approximately fifty minutes. This is a significant amount of time that appellant could not account for. Finally, although appellant claims she only had a "swallow" of beer, it was enough for firefighter Sturkey to smell it on her person at an arm's length conversation. The circumstances created by appellant placed the baby in a substantial risk of serious physical harm.
 {¶ 29} Appellant also argues her conviction is against the manifest weight of the evidence because the trier of fact lost its way in resolving conflicts in the evidence. There were few conflicts, in the evidence presented at trial, and appellant does not cite to any specific conflicts for purposes of this argument. Accordingly, we conclude the trial court did not lose its way when it determined appellant knew the baby was in the backseat of the vehicle and that she took the vehicle under circumstances that created a substantial risk of physical harm to the baby.
 {¶ 30} Appellant's sole assignment of error is overruled.
 {¶ 31} For the foregoing reasons, the judgment of the Court of Common Pleas, Stark County, Ohio, is hereby affirmed.
Wise, J. Farmer, J., and Boggins, J., concur.