JOURNAL ENTRY AND OPINION
{¶ 1} In this Application for Reopening, filed pursuant to App. R. 26(B) and State v. Murnahan (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204, defendant, pro se, seeks to overturn the appellate judgments rendered by this court in State v. Carmon, (Nov. 18, 1999), Cuyahoga App. No. 75377 ("Carmon I").[1]
 {¶ 2} Before Carmon I, however, defendant was convicted in the trial court for the 1997 rape and murder of seventeen-year-old Katherine Boykins. In order to avoid the death penalty, defendant pled guilty to two counts of aggravated murder in violation of R.C. 2903.01 with felony murder specifications (counts one and two), one count of rape in violation of R.C. 2907.02 (count three), and one count of kidnapping in violation of R.C. 2905.01 (count four). The court merged the two counts of aggravated murder and imposed consecutive prison terms of life without parole on count one, ten years imprisonment on count three, and ten years imprisonment on count four.
 {¶ 3} In Carmon I, defendant argued that he was denied his right to a speedy trial and that his guilty pleas were not voluntary, intelligent or knowingly made. After review and oral argument, this court found neither of defendant's arguments meritorious. Accordingly, defendant's convictions and sentences were affirmed.
 {¶ 4} On November 18, 2004, defendant filed the instant Application for Reopening ("Application"). Thereafter, the State of Ohio filed a Brief in Opposition to that Application. In his Application defendant argues that his appellate counsel in Carmon I was ineffective for failing to raise certain issues, namely, the ineffectiveness of his trial counsel and the three-judge panel's failure to follow the procedures outlined in R.C. 2945.06.
 {¶ 5} Before turning to the merits of defendant's Application, however, we first address the State's argument that defendant's Application is untimely.
 {¶ 6} Applications filed pursuant to App.R. 26(B)(1) and (2)(b) claiming ineffective assistance of appellate counsel must be filed within ninety days from the date an appellate court journalizes its decision in a defendant's direct appeal unless he shows good cause for filing at a later time.
 {¶ 7} In the case at bar, Carmon I was journalized on November 18, 1999. Defendant's instant Application was not filed until November 18, 2004, five years after this court affirmed his convictions. Thus, the Application is untimely on its face.
 {¶ 8} Nonetheless, defendant argues that he can demonstrate good cause for the five-year delay. According to defendant because his appellate counsel failed to communicate with him while Carmon I was pending, he was never notified that the appeal had been decided.
 {¶ 9} We reject defendant's argument because "an attorney's failure to communicate with the applicant does not state good cause for failure to file timely." State v. Smith, Cuyahoga App. No. 79301, 2002-Ohio-6620, at ¶ 4, (Appellate counsel's failure to tell defendant that his direct appeal had been decided did not constitute "good cause"). For this reason alone, defendant's Application is untimely and warrants dismissal.
 {¶ 10} Alternatively, defendant's Application can also be dismissed under the principles of res judicata. A claim of ineffective appellate counsel must be raised at the defendant's earliest opportunity. State v.Johnson, (Aug. 8, 2000), Cuyahoga App. Nos. 55295, 55811 and 55812, Motion No. 16591, 2000 Ohio App. LEXIS 3617, at *3 and *4, citing Statev. Williams (1996), 74 Ohio St.3d 454, 659 N.E.2d 1253. The doctrine of res judicata bars further litigation of issues which were raised previously or could have been raised previously in an appeal. State v.Day, Cuyahoga App. No. 79368, 2005-Ohio-281, at ¶ 9.[2] The doctrine will not be applied, however, "unless circumstances render the application of the doctrine unjust." State v. Murnahan (1992),63 Ohio St. 3d 60, 66, 584 N.E.2d 1204.
 {¶ 11} After Carmon I was decided in the case at bar, defendant did not appeal that decision or question his appellate counsel's effectiveness to the Ohio Supreme Court. Because defendant offers no explanation as to why he did not pursue such an appeal, we find nothing unjust in applying the doctrine of res judicata to deny defendant's Application.
 {¶ 12} Finally, even if defendant's Application were timely filed and not barred by res judicata, we would still overrule the merits of his sole assignment of error which states:
THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS UNDER THE UNITED STATES CONSTITUTION AND ARTICLE I SECTION 10 OF THE OHIO CONSTITUTION FOR FAILURE TO RAISE THE ISSUE THAT APPELLANTS GUILTY PLEA WAS INVOLUNTARY DUE TO THE FACT THAT HE RECEIVED INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL, AND ABUSE OF DISCRETION FROM THE COURT.
 {¶ 13} Defendant argues that he received ineffective appellate counsel because his attorney did not raise the following issues in Carmon I:
1. When the trial court held the hearing pursuant to R.C. 2945.06, its three-judge panel failed to follow the statute's mandated procedures. Had it followed the prescribed procedures, the panel would have concluded that Ms. Boykins' murder was an accident and defendant would, therefore, have been convicted of some lesser included offense of aggravated murder;
2. Trial counsel was ineffective because he gave defendant erroneous legal advice. Had defendant known that "accident" is a complete defense to a charge of aggravated murder, he would not have pled guilty. Thus, defendant's guilty pleas to the two aggravated murder charges are invalid.
 {¶ 14} To demonstrate ineffective counsel on appeal, a defendant "must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense." State v. Smith, Cuyahoga App. No. 79301, 2002-Ohio-6620, at ¶ 5, citing Strickland v. Washington
(1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S. Ct. 2052.
 {¶ 15} In order to show prejudice, a defendant must demonstrate that "there is a reasonable probability that, but for counsel's errors, the factfinder would have had a reasonable doubt about his guilt." Id., at 695. In determining whether a defendant has been prejudiced by his appellate counsel's representation, the court "must consider the totality of the evidence before the judge or jury." Id.
 {¶ 16} In order for a court to grant an application for reopening under App.R. 26(B), the defendant must establish that "there is a genuine issue as to whether [he] was deprived of the effective assistance of counsel on appeal." App.R. 26(B)(5). A defendant must show that appellate counsel was deficient for failing to raise the issue he now presents, as well as demonstrate that had he presented those claims on appeal, there was a reasonable probability that he would have been successful. Thus, a defendant has the burden of establishing "that there is a genuine issue as to whether there was a `colorable claim' of ineffective assistance of counsel on appeal." State v. Spivey, 84 Ohio St.3d 24, 25, 1998 Ohio 704, 701 N.E.2d 696.
 {¶ 17} It is well-settled that an appellate attorney has wide latitude and thus the discretion to decide which issues and arguments will prove most useful on appeal. Strickland upholds "the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions." Id. at ¶ 7. Additionally, appellate counsel is not required to argue assignments of error which are meritless. Id.
 {¶ 18} When a defendant pleads guilty to a charge of aggravated murder which is punishable by death, R.C. 2945.06 requires that a three-judge panel be assembled. The panel must follow the procedural steps described in the statute as follows:
If the accused is charged with an offense punishable with death, he shall be tried by a court to be composed of three judges. * * * The accused shall not be found guilty or not guilty of any offense unless the judges unanimously find the accused guilty or not guilty. If the accused pleads guilty of aggravated murder, a court composed of three judges shall examine the witnesses, determine whether the accused is guilty of aggravated murder or any other offense, and pronounce sentence accordingly." (Emphasis added.)
 {¶ 19} In the case at bar, the record demonstrates that on October 27, 1997, the three-judge panel described in R.C. 2945.06 was convened. Defendant complains, however, that he received ineffective appellate counsel in Carmon I because his attorney did not argue that the three-judge panel failed to satisfy the first of three procedural requirements mandated by R.C. 2945.06.[3] The first requirement is that the panel "shall examine the witnesses[.]"
 {¶ 20} Although R.C. 2945.06 requires the court to "examine the witnesses" in determining whether the accused is guilty of aggravated murder, a defendant can, nonetheless, waive that examination when he agrees to be bound by the stipulations of his counsel and the state.State v. Post (1987), 32 Ohio St. 3d 380, 393, 513 N.E.2d 754. When stipulations are agreed to by both parties, the facts included therein comprise evidence in the case. State v. Turner, 105 Ohio St.3d 331, 337,2005-Ohio-1938, 826 N.E.2d 266.
 {¶ 21} In the case sub judice, before defendant entered his guilty pleas in the trial court, the state and defense counsel dispensed with the need for live witnesses. The parties stipulated that the evidence against defendant consisted of the facts set forth in the following documents: The Cuyahoga County Coroner's report and defendant's statement to the East Cleveland Detective Bureau. The parties also stipulated that at the time of his crimes in this case, defendant was sane and competent to stand trial.
 {¶ 22} Since defendant agreed to be bound by the stipulations of counsel, he cannot now complain that the judges should have examined witnesses. Defendant may not assert prejudice by simply alleging, without more, that witnesses would have convinced the panel that Ms. Boykins' death was an accident.
 {¶ 23} Other than defendant's bald assertion that the panel should have examined witnesses, he also fails to identify any particular person who would have been willing and able to testify about the circumstances surrounding Ms. Boykins' death. From the record before this court, defendant has failed to show how he was prejudiced by his counsel's performance in Carmon I.
 {¶ 24} In a related argument, defendant asserts that his trial counsel failed to present any mitigating evidence to prove that Ms. Boykins' death was an accident. According to defendant, appellate counsel was ineffective for not bringing this error to the court's attention inCarmon I.
 {¶ 25} Defendant can only be advancing one of two claims: mitigating evidence proving that Ms. Boykins' death was an accident either exists in the record before this court or such evidence exists outside that record. Regardless of which circumstance defendant is referring to, we reject both arguments for the following reasons.
 {¶ 26} First, defendant does not specify which mitigating evidence he is referring to in the record before this court. From our complete review of that record, we conclude that there is no evidence that Ms. Boykins' death was accidental. Without such evidence, neither defendant's trial nor appellate counsel could have cast a reasonable doubt over the otherwise overwhelming proof that defendant purposefully intended to murder Ms. Boykins.
 {¶ 27} The coroner determined Ms. Boykins' death to be a homicide by strangulation. The Cuyahoga County Coroner's Report, attached as Exhibit "A," to the transcript of proceedings, dated October 27, 1997. Further, in his own statement to The East Cleveland Detective Bureau, defendant admitted that he murdered Ms. Boykins "[b]ecause I couldn't let her tell about the Assault or the Rape because I would be sent back to prison." Defendant's Statement, dated April 20, 1997, attached as Exhibit "B," to transcript of proceedings, dated October 27, 1997. Other than defendant's conclusory assertion that Ms. Boykins' death was an accident, there is no evidence even mildly suggesting that defendant did anything other than intend to kill Ms. Boykins. "Merely asserting error is not sufficient for applicant to demonstrate that both counsel's performance was deficient and that the deficient performance prejudiced him." State v. Hicks, Cuyahoga App. No. 83981, 2005-Ohio-1842, at ¶ 7.
 {¶ 28} Even if defendant is arguing that the evidence of Ms. Boykins' accidental death existed outside the record created in the trial court, we still find no merit in such an argument. That type of error would not only have been beyond the scope of the review in Carmon I, it is also beyond the scope of the subject Application.
 {¶ 29} It is well-settled that "[m]atters outside the record do not provide a basis for reopening." State v. Hicks, Cuyahoga App. No. 83981, 2005-Ohio-1842, at ¶ 7. More properly, "any allegations of ineffectiveness based on facts not appearing in the [trial] record should be reviewed through the postconviction remedies." State v. Coleman,85 Ohio St.3d 129, 1999-Ohio-258, 707 N.E.2d 476, 483.
 {¶ 30} Accordingly, because appellate counsel was confined to the record created in the trial court and there is no mitigating evidence in that record that Ms. Boykins died accidentally rather than being murdered, appellate counsel could not have appropriately raised this issue in Carmon I. Again, defendant has failed to demonstrate that his counsel on appeal was deficient or that he was prejudiced.
 {¶ 31} Defendant further argues that there is "nothing in the record, transcripts, or coroners [sic] report actually [proving] that appellant "purposely" with prior calculation and design intended to kill the victim." Defendant's Application, at p. 4. Again, we disagree.
 {¶ 32} Since part of the accepted evidence in this case consists of defendant's own confession, we rely upon it to ascertain whether defendant purposefully and with prior calculation and design murdered Ms. Boykins.
 {¶ 33} There is no "bright-line test that emphatically distinguishes between the presence or absence of `prior calculation and design.'" Statev. Taylor (1997), 78 Ohio St.3d 15, 20, 676 N.E.2d 82, 89. There are no particular set of factors that can be mechanically applied in determining whether defendant killed his victim with prior calculation and design. "Each case turns on the particular facts and evidence presented at trial." Id.
 {¶ 34} "[W]here evidence adduced at trial reveals the presence of sufficient time and opportunity for the planning of an act of homicide to constitute prior calculation, and the circumstances surrounding the homicide show a scheme designed to implement the calculated decision to kill, a finding by the trier of fact of prior calculation and design is justified." State v. Cotton (1978), 56 Ohio St.2d 8, 381 N.E.2d 190.
 {¶ 35} In the case at bar, even though defendant maintains that Ms. Boykins' death was an accident, the record demonstrates otherwise. In his statement to police, defendant described the argument and physical altercation he and Ms. Boykins had before he killed her. Defendant stated that after Ms. Boykins had grabbed his knife,
with one hand I choked her and with the other I knocked the knife from her hand. I choked this time so bad that she was unable to move. She was alive because I checked her and she was breathing I tied her feet up using clear tape used to close and secure boxies [sic]. I tied her hands using the same tape. I told her that I was going to pay her back for causing me so much problems. I removed the tape on her legs and removed her pants and under-pants [sic] too. Once they were off, I Rapped [sic] her and at the same time, I began to have flash backs [sic] when I Rapped [sic] the other girl I went to jail for. Once I was done having sex with her I ejaculated on some clothing. I tie her legs up again using the same type of tape. I asked her if she was going to act right and she would shake her head yes and no. She began to act up so I put tape over her nose, mouth, eyes and ears. I think she was alive then. I left her there and went to my bedroom and went to sleep.
Defendant's Statement to the East Cleveland Detective Bureau, at pps. 2-3.
 {¶ 36} Defendant admitted that he initially choked Ms. Boykins "so bad," he had to check to make sure she was still breathing. Instead of stopping his assault on Ms. Boykins at this point, however, defendant told her that he "was going to pay her back" for causing him problems. After he raped her, defendant then went through the time and effort of tying Ms. Boykins up again.
 {¶ 37} Then, even though she was restrained, defendant proceeded to tape Ms. Boykins' mouth and nose, effectively stopping her ability to breathe. Defendant claims he then went to sleep. When defendant awoke the next day, Ms. Boykins was dead. Defendant later told police that he killed Ms. Boykins because "I couldn't let her tell about the Assault or the Rape because I would be sent back to prison."
 {¶ 38} From these facts, we conclude that before he murdered Ms. Boykins, defendant had more than enough time and opportunity to reconsider and change his mind about killing her. The circumstances surrounding Ms. Boykins' aggravated murder, which were described to police by defendant himself, show a plan thoughtfully designed to effectuate his calculated decision to kill his victim. From defendant's own admissions and the other undisputed facts in this case, we conclude that defendant engaged in the type of thought processes required for a finding that he purposefully killed Ms. Boykins with prior calculation and design.
 {¶ 39} Finally, defendant argues that the three-judge panel did not follow R.C. 2945.06's last two procedural mandates, namely, that it had to unanimously determine whether the defendant was guilty beyond a reasonable doubt of aggravated murder or of a lesser offense, and that its finding of guilt had to be journalized in order to constitute a valid conviction. State v. Green, 81 Ohio St.3d 100, 105, 1998-Ohio-454,689 N.E.2d 556.
 {¶ 40} Even though the October 27, 1997 transcript shows that three judges heard defendant's case, there is nothing in that transcript demonstrating that the panel conferred with one another or that they, collectively, determined that the charged offense of aggravated murder had been proven beyond a reasonable doubt. There is also no evidence that the panel ever considered that defendant might be guilty of a lesser included offense. The court's journal entry of conviction[4] does not include any of the statutorily mandated information either. Accordingly, we agree with defendant that the panel did not strictly abide by R.C.2945.06's procedural requirements.
 {¶ 41} Though the panel erred, however, we must still determine whether its errors and appellate counsel's failure to raise them inCarmon I amount to prejudicial error.
 {¶ 42} The thrust of defendant's prejudice argument is as follows. According to defendant, there existed exculpatory evidence that Ms. Boykins' death was an accident. Had that evidence been presented to the panel and they then conducted the deliberations required by R.C. 2945.06, he would have been convicted of a lesser offense.
 {¶ 43} Alternatively, defendant alleges that if his trial counsel had marshaled the evidence of Ms. Boykins' accidental death, he would not have pled guilty to the aggravated murder charges. For the reasons that follow, we reject each of defendant's arguments.
 {¶ 44} "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 104 S.Ct. at 2065.
 {¶ 45} Moreover, appellate counsel is not required to make frivolous or otherwise meritless arguments on appeal. Id.
 {¶ 46} In the case at bar, we have already determined defendant stipulated to the facts set forth in his Statement to the East Cleveland police. That Statement and the rest of the evidentiary record in this case wholly fail to even suggest that Ms. Boykins' murder was accidental. Defendant says he thought Ms. Boykins was alive after he taped her mouth and nose and that she accidentally suffocated. This statement, however, does not comport with the coroner's determination that Ms. Boykins was strangled to death. From this record, we conclude that there is no evidence that defendant accidentally killed Ms. Boykins. Accordingly, we conclude that appellate counsel exercised sound appellate strategy by not raising this issue in Carmon I.
 {¶ 47} Defendant also ignores the strong possibility that his counsel in Carmon I decided not to risk raising the "accidental death" issue because the state probably would have withdrawn its agreement not to pursue the death penalty if it thought defendant would go to trial. Because the record establishes that defendant committed the aggravated murder of Ms. Boykins beyond a reasonable doubt, we find no error in counsel's strategy.
 {¶ 48} Accordingly, on the record before us, we cannot say that, but for the panel's failure to strictly follow the procedures set forth in R.C. 2945.06, the outcome of the proceedings would have been otherwise or that defendant would not have entered his guilty pleas. Defendant's sole assignment of error is therefore overruled. Further, because defendant has failed to raise a genuine issue as to whether he was deprived of the effective assistance of appellate counsel, as required under App.R. 26(B)(5), his Application to Reopen is denied.
Judgment accordingly.
DYKE, P.J., AND CORRIGAN, J., CONCUR.
[1] Carmon I was defendant's direct appeal to this court after he was convicted by entering guilty pleas in the trial court.
[2] Discretionary appeal not allowed by State v. Day,105 Ohio St. 3d 1564, 2005 Ohio 2447, 828 N.E.2d 118, 2005 Ohio LEXIS 1187 (Ohio, May 25, 2005) at.
[3] The last two procedural requirements are as follows: (2) determine whether the accused is guilty of aggravated murder beyond a reasonable doubt or any other lesser offense; and (3) pronounce sentence and journalize the conviction. These last two requirements are discussed, infra.
[4] VOL 1 624 PGO575.