OPINION
{¶ 1} Defendant-appellant, India M. Lewis, appeals from a judgment of the Franklin County Court of Common Pleas finding her guilty of disrupting public services in violation of R.C.2909.04, kidnapping in violation of R.C. 2905.01, and carrying a concealed weapon in violation of R.C. 2923.12. Because sufficient evidence and the manifest weight of the evidence support defendant's convictions, we affirm.
 {¶ 2} On October 16, 2003, defendant gave birth to NRL in New Orleans, Louisiana. According to defendant's sister, Bridget Mitchell, Children's Services in Louisiana called Mitchell, who lives in Franklin County, Ohio, and requested that she come to the hospital and take custody of NRL. Mitchell drove from Ohio to Louisiana where the hospital released NRL to Mitchell's care. In the interim, defendant, who was to be psychologically evaluated prior to her release from the hospital, was transferred three days after NRL's birth to a different hospital for evaluation purposes.
 {¶ 3} Mitchell returned to Ohio where she, her husband, and NRL lived. Mitchell testified that she called Franklin County Children's Services ("FCCS") regarding the situation and asked what steps she should take to retain "custody" of NRL. FCCS informed Mitchell that she must file a complaint in the Franklin County Juvenile Court, and Mitchell stated she did as FCCS instructed. According to Mitchell, defendant visited her and NRL in late October for an upcoming hearing in the Franklin County Juvenile Court. Defendant stayed with Mitchell and NRL for approximately one week and then returned to Louisiana without NRL. Although no court order or other formal document was introduced into evidence during the trial in this matter, Mitchell testified she received a court order from the Franklin County Juvenile Court giving her custody of NRL.
 {¶ 4} Sometime in November 2003, defendant learned that another hearing regarding NRL was to be held on December 11, 2003. On December 4, 2003, defendant left Louisiana, traveling by bus to Ohio to attend the upcoming hearing. Mitchell testified that on December 5, 2003, she was on the phone in her home when the line "went dead." She went outside to see what happened and found defendant standing by Mitchell's shed near the phone line. Defendant then entered Mitchell's home and picked up NRL. Mitchell attempted to recover NRL, and a struggle ensued between Mitchell and defendant. Mitchell testified that defendant, while holding the baby, sprayed Mitchell's face with mace and beat Mitchell on the head with an unknown object, causing Mitchell's head to bleed. At some point during the struggle, Mitchell and the baby fell to the ground or, according to defendant, all three of them fell and hit the ground.
 {¶ 5} Defendant ultimately left with NRL and began walking up the street towards a nearby nursery. Mitchell called the police, and Officers Haynes and Ford were dispatched to the scene. When the officers arrived, defendant was walking toward a detached garage structure close to the nursery. Ford testified that defendant was carrying a white bag with her as she walked. After defendant entered the structure, Haynes followed her. He located her in the garage, holding NRL as she sat on stairs that lead to an attic; defendant had a white bag next to her on the stairs. Haynes encouraged defendant not to hurt NRL and told her to release NRL to him. Defendant complied. Haynes handcuffed defendant and took NRL to the police cruiser to warm her, as she was wearing only a nightgown despite very cold temperatures. Ford contacted the medics to examine NRL because he noticed blood, as well as yellow mace stains, on NRL's nightgown.
 {¶ 6} Haynes went back inside the structure, where he searched defendant and the white bag left on the stairs. The bag contained a loaded gun with one round in the chamber. From defendant's coat pockets Haynes recovered two cans of mace, scissors, small knives, and a screwdriver. After two detectives arrived at the scene, one of them noticed Mitchell was bleeding from the head. Medics were called to check Mitchell for injuries. Thereafter, the detectives went to Mitchell's home and went inside, where evidence of a struggle was obvious.
 {¶ 7} Defendant's testimony differed in significant aspects from the state's evidence. According to defendant, she never signed any documents releasing custody of NRL to Mitchell. Rather, defendant claimed the hospital changed the paperwork and allowed Mitchell to take NRL without her written consent. Defendant, however, acknowledged she did not object to Mitchell's taking NRL until defendant was released from the hospital. Defendant also testified she visited Mitchell and NRL in late October and then returned to Louisiana without NRL. At some point, defendant learned court proceedings were to take place regarding NRL, and for that reason defendant returned to Ohio on December 4, 2003 to attend an upcoming hearing. Defendant claimed that when she went to Mitchell's home on December 5, 2003, Mitchell initiated the fight; defendant sprayed mace in Mitchell's face in response to Mitchell pulling a knife on her. Although defendant admitted putting a gun in her bag, she testified she found it on the stairs in the garage where police located her, picked it up, and put it in her bag.
 {¶ 8} Based on the events that took place on December 5, 2003, defendant was indicted on four counts: disrupting public services, aggravated burglary, kidnapping, each with a specification, and carrying a concealed weapon ("CCW"). After a bench trial, defendant was convicted of disrupting public services, kidnapping and CCW. Defendant was sentenced to six months for disrupting public services, three years for kidnapping, and six months for CCW. Defendant appeals, assigning the following errors:
Assignment of Error No. 1:
The guilty verdict as to the kidnapping and CCW convictions were against the manifest weight of the evidence and were not supported by sufficient evidence.
Assignment of Error No. 2:
Appellant was denied the effective assistance of trial counsel due to counsel's failure to present sufficient argument to the trial judge pertaining to Ohio law governing parental rights.
Assignment of Error No. 3:
Since the victim was released in a safe place, unharmed, the evidence does not support conviction of kidnapping as a felony of the first degree.
 {¶ 9} In the first assignment of error, defendant claims the convictions are not supported by sufficient evidence and are against the manifest weight of the evidence. Whether the evidence is legally sufficient to sustain a verdict is a question of law.State v. Thompkins (1997), 78 Ohio St.3d 380, 386. Sufficiency is a test of adequacy. Id. We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus; Statev. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387.
 {¶ 10} When presented with a manifest weight argument, we engage in a limited weighing of the evidence to determine whether the trier of fact's verdict is supported by sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt. Conley, supra; Thompkins, supra, at 387 (stating that "[w]hen a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony"). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. Reversals of convictions as being against the weight of the evidence are reserved for cases where the evidence weighs heavily in favor of defendant. State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 11} With respect to the CCW conviction, former R.C.2923.12, applicable here, provides that "[n]o person shall knowingly carry or have, concealed on the person's person or concealed ready at hand, any deadly weapon or dangerous ordnance." A deadly weapon is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). Defendant was indicted for carrying a concealed firearm. A firearm is defined as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." R.C.2923.11(B)(1).
 {¶ 12} Here, the parties do not dispute that the weapon recovered at the scene was a firearm; they stipulated it was an operable .25 caliber pistol. Defendant initially told police she retrieved the gun from the Greyhound bus, but it was not hers. At trial, defendant testified that after she went into the garage structure, she saw the gun, picked it up with some tissues, and put it in her white bag. Defendant stated "I mean, I thought since all of this craziness was going on, I figured that they was probably going to blame it on me either way it went." (Tr. 132.) Officer Ford testified he saw defendant carry a white bag into the detached garage where she eventually was apprehended. Officer Haynes stated that when he found defendant, she was sitting on the stairs next to a white bag.
 {¶ 13} Although the testimony was not entirely consistent, defendant clearly admitted to picking up the gun and putting it in her bag. Further, Haynes testified that the gun was loaded with five rounds; one was in the chamber. Their testimony is sufficient to demonstrate the statutory elements for CCW. Moreover, no evidence so undermined the noted evidence as to render defendant's conviction against the manifest weight of the evidence.
 {¶ 14} With respect to the kidnapping conviction, R.C.2905.01 provides that "(A) [n]o person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (1) [t]o hold for ransom, or as a shield or hostage; (2) [t]o facilitate the commission of any felony or flight thereafter; (3) [t]o terrorize, or to inflict serious physical harm on the victim or another." The statute further states that "(B) [n]o person, by force, threat, or deception, or in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall knowingly do any of the following, under circumstances that create a substantial risk of serious physical harm to the victim or, in the case of a minor victim, under circumstances that either create a substantial risk of serious physical harm to the victim or cause physical harm to the victim: (1) [r]emove another from the place where the other person is found; (2) [r]estrain another of his liberty; (3) [h]old another in a condition of involuntary servitude." According to the statute, "[w]hoever violates this section is guilty of kidnapping, a felony of the first degree," but "[i]f the offender releases the victim in a safe place unharmed, kidnapping is a felony of the second degree."
 {¶ 15} Although defendant was indicted pursuant to R.C.2905.01(A)(1), (2), (3) and (B)(1) and (2), the issue on appeal resolves to whether defendant knowingly took NRL from the place where she was found under circumstances that either (a) created a substantial risk of serious physical harm, or (b) caused physical harm to NRL. "Physical harm" is any "injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). A "substantial risk" is a strong possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist. R.C.2901.01(A)(8). "Serious physical harm" to persons is defined as any of the following: "(a) [a]ny mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (b) [a]ny physical harm that carries a substantial risk of death; (c) [a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) [a]ny physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) [a]ny physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain." R.C. 2901.01A(A)(5)(a) through (e).
 {¶ 16} Defendant first argues that she cannot be convicted of kidnapping NRL because no evidence established that Mitchell had custody of NRL on December 5, 2003. Defendant claims that because she never signed any document giving Mitchell custody of NRL, she, as the custodial mother, cannot be convicted of kidnapping.
 {¶ 17} When a court interprets a statute, "the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, * * * there is no occasion to resort to other means of interpretation. * * * That body should be held to mean what it has plainly expressed, and hence no room is left for construction." State v. Hairston,101 Ohio St.3d 308, 2004-Ohio-969, at ¶ 12, quoting Slingluff v. Weaver
(1902), 66 Ohio St. 621. If a term or phrase is not ambiguous, a court does not need to interpret it; it must simply apply it. Id.Benjamin v. Credit General Ins. Co., Franklin App. No. 04AP-642, 2005-Ohio-1450, at ¶ 20 (stating that "[w]hen a statute conveys a meaning that is clear, unequivocal and definite, the statute must be applied as written"). Courts lack the authority to ignore the plain language of a statute under the guise of statutory interpretation or liberal or narrow construction.Covington v. Airborne Express, Inc., Franklin App. No. 03AP-733, 2004-Ohio-6978. Rather, a court must give effect to the words used in the statute, accord the words their usual and customary meaning, and not delete words used or insert words that are not used. Cleveland Elec. Illum. Co. v. Cleveland (1988),37 Ohio St.3d 50, paragraph three of the syllabus; Benjamin,
supra.
 {¶ 18} R.C. 2905.01 does not distinguish between persons with custody or privilege and persons without. Rather, R.C. 2905.01
speaks to "any person." The Ohio Supreme Court has held that because R.C. 2905.01 does not except mothers or fathers, anyone regardless of parental rights can be convicted of kidnapping if the requisite elements are met. State v. Hill (1996),75 Ohio St.3d 195, 206; State v. Volgares (May 17, 1999), Lawrence App. No. 98CA 1, appeal not allowed, 86 Ohio St.3d 1489 (holding that even though no physical harm resulted from the mother moving her children's residence to avoid children's services, mother could be convicted of kidnapping because "custodial parents may properly be convicted of kidnapping under R.C. 2905.01[A][5]").
 {¶ 19} The Supreme Court noted that other "deprivation-of-liberty" statutes specifically exclude parents by use of the term "without privilege to do so." Hill, supra, at 206, citing R.C. 2905.02; 2905.03; 2905.05. Had the legislature intended to make such an exception for parents in the kidnapping statute, it could have, as it clearly did in other statutes. Id. The Supreme Court thus determined "that the absence of any reference to privilege in R.C. 2905.01 evinces a clear legislative intent to forbid kidnapping by any person regardless of parental rights." Id. Under the plain language of the statute and the Supreme Court's decision in Hill, defendant may be convicted of kidnapping pursuant to R.C. 2905.01 regardless of whether she had custody of NRL.
 {¶ 20} Despite our conclusion that defendant could be convicted of kidnapping even if defendant had custody of NRL, the record contains sufficient competent, credible evidence to support a finding that NRL was in Mitchell's custody. Defendant testified she consented to Mitchell's initially taking NRL from the hospital back to Ohio where Mitchell lived with her husband. Apparently pursuant to that consent, the hospital released NRL to Mitchell. The record contains no documentary evidence to support defendant's consent or Mitchell's asserted custody, but a reasonable trier of fact could conclude the hospital could not release NRL absent defendant's consent or the appropriate documentation. Although defendant stated she consented to Mitchell's custody of NRL only until defendant was released from the hospital, the evidence suggests otherwise. Mitchell testified defendant came to Ohio in late October, stayed with Mitchell and NRL for one week, and returned to Louisiana without NRL; defendant testified to the same. Defendant also told police Mitchell had custody of NRL.
 {¶ 21} Mitchell's testimony, construed in favor of the state, is sufficient to allow the trier of fact to conclude defendant consented to Mitchell's custody of NRL. Although defendant's testimony was somewhat inconsistent with Mitchell's testimony on the issue of custody, inconsistencies in testimony do not render a conviction against the manifest weight of the evidence. Statev. Raver, Franklin App. No. 02AP-604, 2003-Ohio-958. The trier of fact may take note of the inconsistencies and resolve them accordingly. Id. The trier of fact "may believe all, part, or none of a witness's testimony." Id. at ¶ 21, citing State v.Antill (1964), 176 Ohio St. 61, 67. On this record, the inconsistencies are not so great that the trier of fact could not conclude Mitchell had custody of NRL. Therefore, the manifest weight of the evidence supports a finding that Mitchell had custody.
 {¶ 22} Given those parameters, we next must determine if the statutory elements of kidnapping are met. The evidence undisputedly demonstrates NRL was staying with Mitchell in Mitchell's home. On December 5, 2003, defendant went to Mitchell's home and took NRL outside where a fight ensued. Ultimately, defendant carried NRL up the street and was found in a detached garage structure at a nearby nursery. The evidence thus established defendant removed NRL from the place where NRL was found.
 {¶ 23} Defendant argues that her removing NRL did not physically harm NRL or create a substantial risk of serious physical harm to NRL. While the trial court struggled with this issue, it ultimately found the risk of physical harm was sufficiently serious. It based its conclusion on three factors: defendant used mace while holding NRL, defendant fought with Mitchell while holding NRL, and defendant possessed a firearm when she was apprehended with the child.
 {¶ 24} NRL was six weeks old at the time of the incident in question. Both defendant and Mitchell testified NRL hit the ground during the fight between Mitchell and defendant outside Mitchell's home. Although NRL may not have sustained "serious physical harm" when she hit the ground, NRL would have experienced pain. State v. Warren, Athens App. No. 02CA29, 2003-Ohio-1196 (stating that a child would have experienced pain, hence, physical harm, where child's wrists, ankles, and mouth were duct taped so tight that the tape had to be pulled off, and child's hands were cold and blue). Physical harm is any injury regardless of duration and gravity. R.C. 2901.01(A)(3). The uncontroverted evidence that NRL hit the ground in the fight between defendant and Mitchell is sufficient to support a finding of physical harm.
 {¶ 25} Even if NRL did not suffer physical harm, sufficient evidence, as well as the manifest weight of the evidence, supports the trier of fact's conclusion that the circumstances created a substantial risk of serious physical harm to NRL. Defendant and Mitchell testified that defendant sprayed mace in Mitchell's face while defendant was holding NRL. As evidence that NRL was at risk when defendant and Mitchell fought, both mace and blood from Mitchell's head wound were found on NRL's nightgown. In addition, NRL was exposed to extremely cold temperatures while dressed only in a nightgown and was subject to defendant's control at a time when defendant engaged in fighting while holding NRL, and possessed two cans of mace, knives, and scissors on her person.
 {¶ 26} In the end, NRL, a six-week old infant, was at the mercy of defendant, who fought with Mitchell to the point of bloodshed, exposed NRL to severely cold weather with inadequate clothing, permitted NRL to hit the ground where she could have been seriously injured, and scurried NRL away while possessing potentially lethal items, including a loaded firearm. Viewing the evidence in a light most favorable to the state, a rational trier of fact could have found the state proved defendant removed NRL and subjected her to either physical harm or the risk of serious physical harm. State v. Vinson, Stark App. No. 2003CA00132,2004-Ohio-1568 (holding that an infant was kidnapped under circumstances creating a substantial risk of serious physical harm even though infant was ultimately "unharmed," where defendant drove the infant in a car under a suspended license and had an odor of alcohol on her person when she turned the infant over to a firefighter). Sufficient evidence therefore supports defendant's conviction. Further, because no evidence would cause the trier of fact to reject the noted evidence, the trier of fact did not clearly lose its way and create a manifest miscarriage of justice by finding defendant guilty. Defendant's kidnapping conviction thus is not against the manifest weight of the evidence.
 {¶ 27} Accordingly, defendant's first assignment of error is overruled.
 {¶ 28} In the third assignment of error, defendant maintains that because she released the victim in a safe place unharmed, her conviction should be reduced to a second-degree felony. R.C.2905.01(C). Specifically, defendant contends that because she turned NRL over to Officer Haynes when requested to do so, she voluntarily released NRL unharmed in a safe place. The trial court disagreed, concluding that if police had not apprehended defendant, she would not have released NRL. In response, defendant argues that the statute does not require abandonment of criminal activity before apprehension in order to meet the requirements of R.C. 2905.01(C).
 {¶ 29} "The provision in R.C. 2905.01(C), reducing kidnapping to a felony of the second degree `[i]f the offender releases the victim in a safe place unharmed,' is a mitigating circumstance, rather than an element of the crime of kidnapping. It is in the nature of an affirmative defense and is to be treated as such."State v. Cornute (1979), 64 Ohio App.2d 199, syllabus; Statev. Leslie (1984), 14 Ohio App.3d 343. The burden is on the defendant to prove the mitigating circumstance by a preponderance of the evidence. Cornute, at 201; State v. Jackson (Aug. 23, 1990), Franklin App. No. 89AP-1015.
 {¶ 30} Courts have held that where the victim is released only because the victim was liberated by police, "a defendant fails to establish the mitigating circumstance of having released the victim in a safe place unharmed." Jackson, supra (stating that defendant failed to prove mitigating circumstance to kidnapping where the evidence indicated he did not release the victim from his custody until he was forced to do so by the police), citing Leslie, supra (holding that the evidence did not suggest a finding that defendant released the victims in a safe place unharmed where the uncontroverted evidence was that defendant and both victims were together in the victim's car when the defendant was finally stopped and arrested by police); Statev. Taylor (Nov. 2, 1983), Guernsey App. No. CA-717 (noting that the conviction for four counts of kidnapping was not against the manifest weight of the evidence where defendant held his girlfriend, her two children, and a niece in an apartment until the police arrived and defendant released them); State v.Norwood (May 26, 1981), Lake App. No. CA 8-029 (holding it was "manifestly evident" that the victim was not voluntarily released by the defendant where "[h]ad it not been for the intervention of the back-up officers, [the defendant] would have continued to shackle the officer [victim] and restrain him of his liberty).
 {¶ 31} Here, defendant fails to demonstrate by a preponderance of the evidence that she "released" NRL within the meaning of R.C. 2905.01(C). When police arrived at the scene, Haynes and Ford saw her walk into a detached garage, and they followed her. Haynes testified that once he was inside the structure, he noticed defendant holding NRL as defendant sat on a stairway leading to an attic. "I began talking to her, told her to come down, advised her not to hurt the infant. Telling her we weren't going to hurt her, things such as that, trying to get her to come back down the steps so we could take her and the infant into custody." (Tr. 49.)
 {¶ 32} Although defendant eventually gave NRL to Officer Haynes, defendant presented no evidence to suggest she would have released NRL had police not arrived and stopped her. In the absence of such evidence, sufficient evidence and the manifest weight of the evidence support the trial court's finding that defendant did not release NRL unharmed in a safe place in accordance with R.C. 2905.01(C). Indeed, the evidence suggests only one interpretation: that defendant would have continued with NRL to wherever defendant intended to take her. Accordingly, defendant's third assignment of error is overruled.
 {¶ 33} In the second assignment of error, defendant argues she was deprived of effective assistance of counsel because trial counsel failed to present sufficient argument "pertaining to the Ohio law governing parental rights." Defendant does not suggest what arguments should have been made.
 {¶ 34} The Sixth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, guarantees the right of effective assistance of counsel to a defendant in felony cases. In re Cherry, Franklin App. No. 03AP-485, 2004-Ohio-2142, citing Gideon v. Wainwright (1963),372 U.S. 335 (other citations omitted). To prove ineffective assistance of counsel, defendant must show that counsel's performance was deficient. Strickland v. Washington (1984),466 U.S. 668, 686. To make that showing, a defendant must demonstrate that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. Second, the defendant must show that the deficient performance prejudiced the defense. Id. A defendant must demonstrate a real probability that, but for counsel's errors, the outcome of the proceedings would have been different. Id. at 694. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. Id. at 696.
 {¶ 35} In determining whether trial counsel's assistance was ineffective, an appellate court's review is strictly limited to the record that was before the trial court. Cherry, supra, quoting Napper v. Napper, Allen App. No. 1-02-82, 2003-Ohio-2719 (holding pursuant to App.R. 12[A], appellate courts are confined to the record before it). Allegations of ineffectiveness based on facts not appearing in the trial record are properly reviewed through post-conviction remedies. State v.Carmon, Cuyahoga App. No. 75377, 2005-Ohio-5463, citing Statev. Coleman (1999), 85 Ohio St.3d 129.
 {¶ 36} Here, defendant's argument is based on speculation and presumes that Ohio law governing parental rights would change the outcome of this case. Based on the plain language of R.C.2905.01, however, custodial parents properly may be convicted of kidnapping. Thus, even if defendant could demonstrate trial counsel's performance was somehow lacking, defendant cannot demonstrate actual prejudice based on Ohio law. State v. Belt,
Union App. No. 14-03-36, 2004-Ohio-1511, citing Strickland,
supra (noting that "[a]n error on the part of counsel will not warrant setting aside the judgment of the proceeding unless the error had an effect on that judgment"). Further, contrary to defendant's contention, trial counsel addressed the issue of whether defendant or Mitchell had custody during trial. Accordingly, defendant's second assignment of error is overruled.
 {¶ 37} Having overruled defendant's three assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
French and McGrath, JJ., concur.