OPINION
{¶ 1} Defendant-appellant, Norman S. Abdullah, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of kidnapping in violation of R.C. 2905.01, one count of attempted rape in violation of R.C. 2923.02 as it relates to 2907.02, three counts of gross sexual imposition in violation of R.C. 2907.05, and two counts of rape in violation of R.C. 2907.02. Because defendant received effective assistance of counsel, and because the sufficiency and manifest weight of the evidence support defendant's kidnapping conviction and sexual predator classification, we affirm in part; because the trial court must review the state's proposed post-trial amendment to the indictment, we reverse in part to allow that review.
 {¶ 2} According to the state's evidence, for eight or nine months in 2003, then eight-year-old K.A. lived with her grandparents, defendant and Marilyn Williams, at her grandparent's residence. Williams slept in one bedroom, K.A. in another, and defendant on the living room floor. On the morning of November 28, 2003, while Williams was still in bed, defendant tightly closed Williams' bedroom door, called K.A. into the living room, put his hand over her mouth and "tried to put his private parts in [her] butt." (Tr. 14.) While motioning to her pelvic area, K.A. testified that defendant's "private" was "his front." (Tr. 15.) The incident ended when K.A.'s aunt, the daughter of defendant and Williams, unexpectedly came to the front door; defendant told K.A. "to go to her room and pull up her pants and act like [she] was getting out of bed." (Tr. 33.)
 {¶ 3} K.A.'s aunt testified that she stood outside the door to her parents' house for two or three minutes, ringing the doorbell and knocking on the door and window, before she noticed the door slightly ajar. When the aunt entered the house, she saw defendant standing by the entrance wearing a T-shirt and holding a blanket in front of his lower body. The aunt repeatedly asked defendant where K.A. was, but he only mumbled in response. About the same time defendant mustered an answer, K.A. ran out of her bedroom and hugged her aunt. As her aunt bent down to kiss K.A. on the forehead, she saw through the reflection in a nearby mirror that defendant's "pants were down to his ankles and his butt was hanging out from behind the blanket." (Tr. 41.) K.A.'s aunt asked K.A. if she wanted to leave with her; K.A. said yes and grabbed her coat, hat and shoes while her aunt told Williams that she would be back later.
 {¶ 4} K.A.'s aunt noticed that K.A.'s behavior was unusual that morning: K.A. sat on the bed looking sad while her play-friend dressed up and danced to music, and K.A. did not eat when she, her aunt and several of her aunt's friends went out for breakfast. On the drive back to defendant and Williams' house, K.A.'s aunt asked K.A. whether anyone ever made her feel uncomfortable or did anything to hurt her; K.A. did not respond. When she specifically asked K.A. whether her grandfather made her feel uncomfortable or did anything to hurt her, K.A. replied that defendant "squeezes my butt really, really hard, and it hurts." (Tr. 45.) According to K.A.'s aunt, K.A. explained that defendant squeezes her butt with his pants down while she faces away from him. The aunt further inquired why it took so long to answer the door that morning; K.A. answered, "Because pa-pa was trying to make me suck his penis." (Tr. 46.)
 {¶ 5} K.A.'s aunt drove toward her parent's street where she saw Williams walking. She told Williams to get into the car because K.A. had something to tell her. According to Williams, K.A. explained that defendant "tried to force her to suck on his penis" and that it happens sometimes when Williams is away playing bingo. (Tr. 46-47.) K.A.'s aunt, Williams and K.A. then went straight to the police station.
 {¶ 6} A few days later, Williams took K.A. to Children's Hospital to be examined. Gail Horner, a pediatric nurse practitioner, testified that she conducted a physical examination of K.A. in early December 2003. Horner's colposcopic examination revealed that K.A.'s hymen was attenuated on both the left and right lateral walls and the bottom of K.A.'s hymen was thinner than the normal one millimeter. Horner testified that these findings are "consistent with the sexual abuse and consistent with a history of penetration." (Tr. 75.)
 {¶ 7} K.A. testified that defendant began touching her before November 28, 2003, when she was seven years old. K.A. explained that defendant would touch her "butt" when he tucked her in or walked her to school. She testified that on other occasions, defendant would "open [her] butt and try to put his right private part in [her] butt." (Tr. 20.) K.A. said it "hurted" but she didn't tell defendant of the pain because "he would have his hand over [her] mouth." (Tr. 20.) According to K.A., defendant also tried to "hump" her, and "he would try to pull down his pants and put it in my mouth." (Tr. 22.) K.A. explained that every time Williams would leave the house, defendant "would start off kissing [her] and stuff," then he would take off his and her pants and "get on top of [her]." (Tr. 23.) Besides touching her "butt," K.A. testified that defendant "put his hand in [her] [front] private part" approximately six times. (Tr. 24.) She denied that defendant ever tried to do anything else to her "front private part." (Tr. 25.)
 {¶ 8} To rebut the state's evidence, defendant took the stand and categorically denied sexually abusing his granddaughter. Defendant testified he believed he was accused because K.A. had been "messing around" with other boys. He explained, "There is a bunch of little gang bangers. I don't trust them. I don't know what [K.A.] does with them." (Tr. 90.) Defendant implied that K.A. was promiscuous and specifically referred to her unusual behavior after K.A. spent time with her boyfriend. Defendant also suggested that he was accused because he was very firm with all his children, including K.A. "It's out of her fear of doing wrong that she has lied." (Tr. 83.) Defendant maintained that K.A. cannot be trusted because she lied before to her own mother and grandmother. Defendant explained his behavior on November 28, 2003 by clarifying he was sleeping on the living room floor because he had been watching Jay Leno the night before. He testified he "has very few clothing, that the clothing half the time fell off. So the underwear wasn't good. I wasn't sitting in there all naked." (Tr. 84.)
 {¶ 9} By indictment filed December 8, 2003, defendant was charged as to K.A. with: (1) kidnapping by force on November 28, 2003 with the purpose to engage in sexual activity; (2) attempted rape with force on November 28, 2003; (3) gross sexual imposition with force on November 28, 2003; (4) rape (fellatio) with force from February 21, 2002 to November 27, 2003; (5) rape (fellatio) with force from February 21, 2002 to November 27, 2003; (6) rape (fellatio) with force from February 21, 2002 to November 27, 2003; (7) rape (vaginal intercourse) with force from February 21, 2002 to November 27, 2003; (8) rape (vaginal intercourse) with force from February 21, 2002 to November 27, 2003; (9) gross sexual imposition with force from February 21, 2002 to November 27, 2003; and (10) gross sexual imposition with force from February 21, 2002 to November 27, 2003.
 {¶ 10} After a one-day bench trial, the trial court found defendant guilty of Counts 1, 2, 3, 7, 8, 9, and 10, dismissed Counts 4, 5, and 6, and found by clear and convincing evidence that defendant was a sexual predator pursuant to R.C. 2950.09. The court imposed a nine-year sentence on Count 1, seven-year sentence on Count 2, four-year sentences on Counts 3, 9, and 10, and life sentences on Counts 7 and 8; all sentences are to be served concurrently.
 {¶ 11} Defendant appeals, assigning four errors:
 FIRST ASSIGNMENT OF ERROR
Appellant was denied effective assistance of counsel as guaranteed under the Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution because counsel failed to timely object to the introduction of inadmissible evidence that was inflammatory and highly prejudicial.
 SECOND ASSIGNMENT OF ERROR
The trial court erred in finding Appellant to be a sexual predator.
 THIRD ASSIGNMENT OF ERROR
There was insufficient evidence to support the guilty verdicts on the rape charges set forth in Counts Seven and Eight, and those verdicts were against the manifest weight of the evidence, thereby, depriving Appellant of his due process protections under the state and federal Constitutions.
 FOURTH ASSIGNMENT OF ERROR
There was insufficient evidence to support the guilty verdict on the kidnapping charge set forth in Count One as a felony of the first degree, and that verdict was against the manifest weight of the evidence, thereby, depriving Appellant of his due process protections under the state and federal Constitutions.
 {¶ 12} For ease of discussion, defendant's assignments of error will be discussed out of order.
 I. Third Assignment of Error {¶ 13} Defendant contends in his third assignment of error that the sufficiency and manifest weight of the evidence do not support his rape convictions. In assessing whether the state presented sufficient evidence to support defendant's rape convictions, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Goodwin
(1999), 84 Ohio St.3d 331, 343-344, quoting State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The verdict will not be disturbed unless it is determined that reasonable minds could not reach the conclusion the trier of fact reached. Id. at 344.
 {¶ 14} When presented with a manifest weight challenge, the appellate court engages in a limited weighing of the evidence to determine whether sufficient, competent, credible evidence permits reasonable minds to find guilt beyond a reasonable doubt.State v. Conley (Dec. 16, 1993), Franklin App. No. 93AP-387. To make the determination, the court reviews the entire record as the "thirteenth juror" and decides whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Statev. Thompkins (1997), 78 Ohio St.3d 380, 387. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 15} Rape, as defined in R.C. 2907.02(A)(1)(b), provides, in pertinent part, that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." Sexual conduct "means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so, the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse." R.C. 2907.01(A).
 {¶ 16} Defendant contends the evidence does not support his rape convictions on Counts 7 and 8 of the indictment that allege vaginal rape, because the state never proved defendant had vaginal intercourse with K.A.K.A. testified that defendant digitally penetrated her vagina but denied that defendant tried "to do anything else to [her] front part, [her] coo-coo, with something other than his hand." (Tr. 25.) Without K.A. attesting to vaginal penetration, defendant maintains the state's only evidence, Horner's testimony, insufficiently supports his rape convictions because not only did her testimony lack foundational detail to support a finding of genital-to-genital penetration, but her conclusion lacked quantitative measurements. Defendant concludes by asserting that even if Horner's testimony is sufficient to prove vaginal rape, K.A.'s contrary testimony demonstrates his convictions are against the manifest weight of the evidence.
 {¶ 17} In response, the state contends four pieces of evidence support defendant's convictions for engaging in vaginal intercourse with K.A.: (1) K.A. testified defendant tried to "hump" her; (2) Horner testified K.A. gave a history of genital-to-genital contact; (3) K.A. testified she bled in her underwear; and (4) Horner testified the physical findings were "consistent with sexual abuse and consistent with a history of penetration." When this evidence is taken as a whole, the state contends, it adequately proves that defendant engaged in vaginal intercourse with K.A.
 {¶ 18} The state first suggests K.A.'s testimony that defendant tried to "hump" her is sufficient to prove defendant engaged in vaginal intercourse with K.A. K.A.'s testimony, however, only mentioned that defendant tried to "hump" her and never stated that defendant actually "humped" her. Moreover, K.A. did not explain exactly what "hump" meant to her and, even assuming she was referring to sexual intercourse, K.A. did not specify what part of her body defendant tried to "hump." In light of K.A.'s prior testimony that defendant "tried to put his private parts in [her] butt" and her denial that defendant attempted to put anything but his hand in her "front private," the state's first piece of evidence does not sufficiently proof defendant had vaginal intercourse with K.A.
 {¶ 19} The state next contends that K.A's disclosed history of genital-to-genital contact proves that defendant had vaginal intercourse with K.A. Nothing in the state's evidence, however, suggests that K.A. engaged in genital-to-genital contact with defendant or that the genital-to-genital contact involved actual penetration.
 {¶ 20} Evidence that K.A. bled in her underwear is also insufficient to prove vaginal intercourse. Bleeding can occur for a variety of reasons. Testimonial evidence suggested the bleeding may have occurred for menstrual reasons or from digital or attempted anal penetration, but nothing in the state's evidence suggests the bleeding resulted from vaginal intercourse, let alone vaginal intercourse with defendant.
 {¶ 21} Finally, the state contends physical evidence proves defendant engaged in vaginal intercourse with K.A. because Horner testified the physical findings were "consistent with sexual abuse and consistent with a history of penetration." Horner's physical findings neither implicate defendant nor specify genital penetration as opposed to digital penetration.
 {¶ 22} The state's four pieces of evidence, even in the aggregate, are insufficient to prove that defendant engaged in vaginal intercourse with K.A. Each piece of evidence forced the court to draw multiple conclusions from incomplete or inconclusive testimony, as no direct or circumstantial evidence proved that defendant engaged in vaginal intercourse with K.A. Insufficient evidence exists to support defendant's rape convictions.
 {¶ 23} Although the state's evidence is insufficient to prove that defendant raped K.A. by engaging in vaginal intercourse as alleged in Counts 7 and 8 of defendant's indictment, the state's evidence proved defendant raped K.A. by engaging in another type of sexual conduct, digital penetration. A variance between the indicted sexual conduct and the sexual conduct proven at trial does not require that we reverse defendant's rape convictions. See State v. Koelling (Mar. 21, 1995), Franklin App. No. 94APA06-866 (holding that variance between indicted time frame and time frame proven at trial does not require the court to reverse for insufficient evidence). Pursuant to Crim.R. 7(D), a court may amend an indictment after trial, provided (1) no change is made in the name or identity of the crime charged, and (2) a defendant is afforded the due process protections under Crim.R. 7(D) of discharge of the jury or a continuance, unless "it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made." Crim.R. 7(D).
 {¶ 24} Here, the state indicted defendant for rape by vaginal intercourse but proved defendant committed rape by digital penetration. Amending a rape charge from one type of sexual conduct to another type of sexual conduct changes neither the name nor the identity of the rape offense. State v. Martin,
Franklin App. No. 05AP-818, 2006-Ohio-2749, at ¶ 9, citing Statev. Smith, Franklin App. No. 03AP-1157, 2004-Ohio-4786, at ¶ 11;State v. Hickman, Summit App. No. 20883, 2002-Ohio-3406, at ¶ 39-42. Because vaginal intercourse and digital penetration are two forms of sexual conduct, Counts 7 and 8 of defendant's indictment may be amended to conform to the evidence produced at trial. The issue therefore resolves to whether defendant was misled or prejudiced by the variance reflected in the amendment, thereby entitling him to the due process protections afforded by Crim.R. 7(D).
 {¶ 25} The Koelling court found the variance between the indicted time frame and the time frame proven at trial neither misled nor prejudiced the defendant because the state's failure to indict on the broader time frame did not affect the defense strategy. The defendant in Koelling claimed that the victims were unduly influenced, and he categorically denied that any sexual abuse occurred; the defendant did not claim alibi or any other defense that the difference in time frames would affect. Id. The court thus found that amending the indictment to reflect a broader time frame would not deprive defendant of either his "undue influence" or "categorical denial" defenses. Accordingly, the court remanded the case to the trial court for the limited purpose of amending the indictment to reflect the broader time frame. Id.
 {¶ 26} Here, like the defendant in Koelling, defendant categorically denied that he sexually abused his granddaughter and suggested the accusations were a result of either K.A.'s "messing around" with other boys or revenge for his firm control over her. No part of defendant's defense theory individually questioned or attacked the rape charge on the specific element of vaginal intercourse or, for that matter, any specific form of sexual abuse in the ten-count indictment. On this record, indicting defendant on a charge of rape based on another form of sexual conduct arguably will not deprive defendant of his defense theories. Defendant thus arguably was not misled or prejudiced from the state's failure to indict for rape premised on digital penetration.
 {¶ 27} At trial, defendant did not suggest the state's evidence was lacking in any particular, and so the trial court was not alerted to the deficiency claimed on appeal. Had defendant raised the issue, the trial court could have addressed the issue of amending the indictment and whether any resulting prejudice would accrue to defendant. While defendant's defense to the charges does not suggest an amended indictment would mislead or prejudice him, we note this matter was tried to the court and resulted in life sentences. Unlike a jury trial, this case presents a unique opportunity to remand this matter to the trial judge that heard the case to allow him to address the proposed amendment under Crim.R. 7(D), as he would have during the trial had he been alerted to the specific issue. On remand, the judge may examine whether the state's requested amendment would mislead or prejudice defendant. Should the trial court determine an amendment would mislead or prejudice defendant, the court should follow the dictates of Crim.R. 7(D), but if the court finds neither factor, the convictions will stand under the amended indictments. Defendant's third assignment of error is sustained to the limited extent indicated.
 II. Fourth Assignment of Error {¶ 28} In his fourth assignment of error, defendant contends the sufficiency and manifest weight of the evidence do not support his kidnapping conviction as a felony of the first degree. R.C. 2905.01(A) governs the offense of kidnapping and states, in pertinent part, that "[n]o person, by force, threat, or deception, or, in the case of a victim under the age of thirteen * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o engage in sexual activity, as defined in section2907.01 of the Revised Code, with the victim against the victim's will." Kidnapping is generally a first degree felony, but if the offender releases the victim in a safe place unharmed, it is a second degree felony. R.C. 2905.01(C).
 {¶ 29} The indictment charged defendant with restraining K.A. on November 28, 2003, for the purpose of engaging in sexual activity. The facts supporting the kidnapping charge reveal that defendant was attempting to rape K.A. when K.A.'s aunt unexpectedly knocked on the front door. Defendant stopped what he was doing and told K.A. "to go to her room and pull up her pants and act like [she] was getting out of bed." (Tr. 33.) Defendant contends that because K.A. did not indicate defendant raped or otherwise harmed her, and because he sent K.A. into her room when her aunt arrived, the evidence proves that he released K.A. unharmed in a safe place.
 {¶ 30} Releasing the victim in a safe place unharmed is an affirmative defense that a defendant must prove by a preponderance of the evidence. State v. McKnight,107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 233; State v. Lewis, Franklin App. No. 04AP-1112, 2005-Ohio-6955, at ¶ 29. Because a sufficiency-of-the-evidence review does not apply to affirmative defenses, State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, at ¶ 37-38, we determine whether the manifest weight of the evidence demonstrates defendant met his burden of proving by a preponderance of the evidence that he released K.A. unharmed in a safe place.
 {¶ 31} Where a victim is released only because police liberated the victim, "a defendant fails to establish the mitigating circumstance of having released the victim in a safe place unharmed." Lewis, at ¶ 30, quoting State v. Jackson
(Aug. 23, 1990), Franklin App. No. 89AP-1015. Here, like the defendants in Lewis and Jackson, defendant only "released" K.A. because K.A.'s aunt unexpectedly interrupted him. Although defendant likely would have eventually released K.A. had K.A.'s aunt not interrupted him, defendant presented no evidence to suggest that he would not have harmed K.A. had her aunt not arrived. Absent such evidence, the manifest weight of the evidence support defendant's kidnapping conviction as a first-degree felony. Accordingly, defendant's fourth assignment of error is overruled.
 III. First Assignment of Error {¶ 32} Defendant's first assignment of error contends he was denied effective assistance of counsel because his trial counsel elicited damaging testimony during cross-examination and failed to timely object to the admission of the victim's hearsay statements. To prove ineffective assistance of counsel, defendant must show that counsel's performance was deficient. Stricklandv. Washington (1984), 466 U.S. 668, 686. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed a defendant by theSixth Amendment to the United States Constitution. Id. The defendant must then show that counsel's deficient performance prejudiced his defense. Id. This requires demonstrating that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694.
 {¶ 33} "Judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. A properly licensed attorney is presumed competent, and the burden of proving ineffectiveness is on the defendant. State v. Smith (1985), 17 Ohio St.3d 98, 100. Counsel's actions that "might be considered sound trial strategy" are presumed effective. Strickland, supra, at 689. "Prejudice" exists only when counsel's performance renders the result of the trial unreliable or the proceeding unfair. Id. The accused must demonstrate a reasonable probability that a different verdict would have been returned but for counsel's deficiencies. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
 {¶ 34} Defendant first argues he was denied effective assistance because his trial counsel elicited damaging information from the state's witnesses on cross-examination. Specifically, defendant maintains defense counsel was deficient in eliciting: (1) K.A.'s testimony that defendant threatened her; (2) the testimony of K.A.'s aunt that defendant had a propensity for violence; and (3) Williams' testimony that defendant molested another child. Defendant contends his counsel's failure to know the nature of the witness' testimony before the commencement of trial rendered his performance deficient.
 {¶ 35} "The extent and scope of cross-examination clearly fall within the ambit of trial strategy, and debatable trial tactics do not establish ineffective assistance of counsel."State v. Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235, at ¶ 146. "[A]n appellate court reviewing an ineffective assistance of counsel claim must not scrutinize trial counsel's strategic decision to engage, or not engage, in a particular line of questioning on cross-examination." State v. Dorsey, Franklin App. No. 04AP-737, 2005-Ohio-2334, at ¶ 22, quoting In reBrooks, Franklin App. No. 04AP-164, 2004-Ohio-3887, at ¶ 40.
 {¶ 36} Here, we have no cause to second-guess defense counsel's cross-examination strategy. The challenged cross-examination attempted to cast doubt upon the witness' credibility and show their bias toward defendant by asking, in one form or another, why the witnesses never confronted defendant about his behavior or brought it out in the past. Although defense counsel's strategy failed when he encountered unexpected damaging answers, an unsuccessful strategy does not render counsel's assistance constitutionally ineffective.
 {¶ 37} Defendant next argues that he was denied effective assistance because his trial counsel repeatedly failed to object to hearsay statements from the victim. Defendant contends this failure allowed K.A.'s aunt to testify that K.A. told her: (1) defendant squeezed her butt really hard; (2) defendant tried to make her suck his penis; (3) defendant sexually abused her when Williams was at bingo; (4) she had blood in her pants after the incidents; (5) she did not say anything earlier because she was afraid; and (6) these incidents happened at other times. Additionally, Williams testified K.A. told her that defendant was "bothering" her and she did not say anything earlier because defendant threatened to hurt her and her family, that K.A.'s aunt said "daddy [was] raping [K.A.]," and that K.A.'s babysitter told Williams K.A. had been talking about sex. Defendant claims these statements bolstered the victim's credibility and, in the aggregate, affected the trial's outcome.
 {¶ 38} The circumstances do not support defendant's claim of ineffective assistance of counsel. Initially, even if counsel should have objected to the hearsay, defendant had an opportunity to cross-examine K.A. and her aunt concerning the subject matter of the alleged hearsay and, in doing so, allow the court to assess their credibility. State v. Loch, Franklin App. No. 02AP-1065, 2003-Ohio-4701, at ¶ 14 (stating that cross-examination and fact-finder's ability to assess witness' demeanor eliminate two risks normally inherent to admitting hearsay testimony). Moreover, defendant's case was tried to the bench, and nothing in the court's judgment suggests it relied on hearsay testimony. State v. White (1968), 15 Ohio St.2d 146,151 (concluding that a judge in a criminal bench trial is presumed to consider only the relevant, material, and competent evidence in arriving at a judgment unless it affirmatively appears to the contrary). Finally, to the extent the above do not address defendant's concerns, the hearsay testimony duplicated K.A.'s admissible testimony. State v. Tomlinson (1986),33 Ohio App.3d 278, 281 (finding any error in the admission of hearsay is generally harmless when the declarant is cross-examined on the same matters and the seemingly erroneous evidence is cumulative in nature). Accordingly, defendant's first assignment of error is overruled.
 IV. Second Assignment of Error {¶ 39} Defendant's second assignment of error contends insufficient evidence supports the trial court's finding he is a sexual predator. Defendant argues that because his lack of prior sexually oriented offenses, his age, and his likely age on release, the court improperly determined defendant is likely to engage in sexually oriented offenses in the future. An appellate court reviewing a finding that a defendant is a sexual predator must examine the record to determine whether the trier of fact had sufficient evidence before it to satisfy the clear and convincing standard. State v. Williams, Franklin App. No. 02AP-35, 2002-Ohio-4503, at ¶ 90, citing State v. Keffe (Sept. 21, 2000), Franklin App. No. 00AP-118.
 {¶ 40} To be designated a "sexual predator," a defendant "must have been convicted of or pled guilty to committing a sexually oriented offense and must be `likely to engage in the future in one or more sexually oriented offenses.'" State v.Eppinger (2001), 91 Ohio St.3d 158, 161, quoting R.C.2950.01(E). R.C. 2950.09(B)(1) provides for sexual offender classification hearings and, at such hearings, the state must present "clear and convincing evidence" upon which the trial court can determine that an offender is a sexual predator.Eppinger, at 163. R.C. 2950.09(B)(3) sets forth the factors the trial court is to consider in making such a determination. "No requisite number of these factors must apply before an offender is found to be a sexual predator and the trial court may place as much or as little weight on any of the factors as it deems to be relevant; the test is not a balancing one." State v. McDonald,
Franklin App. No. 03AP-853, 2004-Ohio-2571, at ¶ 8. Thus, "[e]ven one or two factors are sufficient as long as the evidence of likely recidivism is clear and convincing." Id.
 {¶ 41} In the present case, defendant was 58 years of age at the time of the incident. R.C. 2950.09(B)(3)(a). Although he did not have a record of prior sexual offenses, defendant had a criminal record. R.C. 2950.09(B)(3)(b). More importantly, K.A. was between seven and eight years of age at the time defendant committed the offenses. R.C. 2950.09(B)(3)(c); State v. Daniels
(Feb. 24, 1998), Franklin App. No. 97APA06-830 (stating that the age of the victim is a telling indicator of the depths of the offender's inability to refrain from such illegal conduct and this lack of restraint poses a considerable risk of recidivism). As the grandfather of K.A., defendant also occupied a position of trust and authority by virtue of that relationship. R.C.2950.09(B)(3)(j); see, also, State v. Carter (Aug. 9, 2001), Franklin App. No. 00AP-1365 (stating that "[a]ppellant's taking advantage of his position of trust is another factor in support of the sexual predator finding").
 {¶ 42} After noting the preceding facts, the trial court, presumably referring to K.A.'s testimony that defendant repeatedly engaged her in sexual activity over a two-year span, found that overwhelming evidence demonstrated defendant's sexual conduct was part of a demonstrated pattern of abuse. R.C.2950.09(B)(3)(h); State v. Imler, Franklin App. No. 04AP-1246,2005-Ohio-4241, at ¶ 10 (finding repeated sexual abuse of a minor over a period of months demonstrates a pattern of sexual misconduct). Although the trial court found that defendant did not demonstrate cruelty toward K.A., R.C. 2950.09(B)(3)(i), it expressed concern that defendant repeatedly denied sexually abusing K.A. even after the court found strong evidence for his convictions. The court found defendant's state of denial demonstrated he had no remorse for his actions. R.C.2950.09(B)(3)(j); State v. Ibrahim, Franklin App. No. 03AP-900,2004-Ohio-4220, at ¶ 29 (stating lack of remorse and acknowledgement of the crime weighs in favor of a sexual predator finding).
 {¶ 43} The record here reflects that the trial court not only considered the relevant statutory provisions, but discussed the evidence and factors it relied upon in making its determination that defendant was likely to re-offend, and, therefore, should be classified a sexual predator. The noted evidence is sufficient to support the trial court's sexual predator adjudication. Accordingly, defendant's second assignment of error is overruled.
 {¶ 44} Having overruled defendant's first, second, and fourth assignments of error, but having sustained his third assignment of error to the limited extent indicated, we affirm the judgment of the trial court in every respect except that the matter is remanded to the trial court to consider the state's request that Counts 7 and 8 of the indictment be amended to reflect sexual conduct in the form of digital penetration rather than vaginal intercourse.
Judgment affirmed in part and reversed in part; caseremanded.
Petree and Bowman, JJ., concur.
Bowman, J., retired, of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.