OPINION
{¶ 1} Defendant-appellant, Eric R. Westerfield, appeals from a judgment of the Franklin County Court of Common Pleas convicting him of rape, a violation of R.C. 2907.02 and a felony of the first degree. For the following reasons, we affirm the judgment of the trial court.
 {¶ 2} In August 2006, defendant was indicted on two counts of rape, both violations of R.C. 2907.02 and felonies of the first degree. Count one of the indictment alleged that defendant, sometime from May 22 to June 12, 2006, engaged in vaginal *Page 2 
intercourse with M.D.[1] and that M.D. was eight years old at the time. Count two alleged that defendant, on June 22, 2006, engaged in digital anal intercourse with eight-year-old M.D.
 {¶ 3} Defendant pled not guilty as charged, and, after multiple continuances, the case proceeded to a jury trial in October and November 2007. Before the start of trial, a competency hearing was held to determine whether M.D. was competent to testify as a witness. Over defendant's objection, M.D. was declared competent to testify.
 {¶ 4} Renee Glover, M.D.'s mother, testified as follows. Ms. Glover and defendant met each other in high school and then parted ways until 2001 when they began a romantic relationship. They eventually married in February 2006. Ms. Glover was not employed on June 22, 2006, but was attending school at Columbus State Community College. She was looking for employment. On June 22, 2006, she planned to go to a job fair so she went to the library and a local office supply store in order to print her resume. Two of her three children were at her home with defendant; the other child was at daycare. Ms. Glover had informed defendant that she was going to the job fair. Unable to print her resume, she decided to return home.
 {¶ 5} Upon arriving at her house, she noticed that the blinds to the front room were open, which seemed unusual to her. She thought that defendant may have been talking with another woman. She entered the house and slowly went through the house, thinking she could catch him on the phone. She looked into the bedroom and saw M.D. "just staring blankly just straight ahead." (Tr. 147.) Ms. Glover could see M.D.'s face, but the rest of her body was covered. M.D. was laying on her back and defendant was laying *Page 3 
on his side next to her. M.D. and defendant were both underneath a blanket. She saw her "private area moving, and [she] saw a lump next to her." Id. Ms. Glover could not directly see what was happening underneath the blanket, but she "saw the movement near [M.D.'s] vaginal area." (Tr. 155.) Ms. Glover said "What is going on?" (Tr. 147.) M.D. pulled up her pants.
 {¶ 6} Ms. Glover grabbed M.D. and took her into another room. She asked M.D. "what went on?" Id. M.D. looked scared and was crying. Ms. Glover heard banging on the door to the room, and she heard defendant yelling "What is going on, what is wrong, what is wrong?" Id. M.D. "said that Eric had been touching her in her private part." (Tr. 151.) Ms. Glover was able to contact Heather Westerfield, defendant's sister-in-law, who picked up Ms. Glover and her children. They took M.D. to Children's Hospital.
 {¶ 7} Clinical Social Worker Sarah Saxbe, who is employed at Children's Hospital, interviewed M.D. after she was brought to the hospital. Ms. Saxbe testified that M.D. stated that defendant, on the day of the interview, had pulled her shorts down and put his finger in her butt while they were on her mom and defendant's bed. Ms. Saxbe spoke with the medical team, and it was determined that because it was a digital penetration allegation, and there would be no evidence to collect, an evidence kit, or "rape kit," would not be used in connection with the examination of M.D.
 {¶ 8} Jeremy Larson, M.D., is an emergency room physician at Children's Hospital and is board-certified in general pediatrics and pediatric emergency medicine. Dr. Larson testified that M.D. had a general physical examination and an external genital examination at the hospital. The general physical examination revealed no injuries and the genital examination was normal. According to Dr. Larson's testimony, the normalcy of *Page 4 
the genital examination was not inconsistent with the allegation of sexual contact because a normal examination does not negate the possibility of sexual assault or abuse.
 {¶ 9} M.D.'s testimony at trial regarding what occurred on June 22, 2006, indicated as follows. Defendant told her to go into her mom's bedroom and take off her pants. Defendant put his finger into her vagina. This had happened two or three times, and the last time he did it was when her mom caught him.
 {¶ 10} After the state's witnesses had testified, the state requested that count two of the indictment, which alleged digital anal intercourse, be amended to allege the alternative, digital anal intercourse or digital vaginal intercourse. Defense counsel objected to the amendment but did not ask that the jury be discharged. The trial court allowed the amendment and permitted defense counsel to reexamine any of the state's witnesses as defense counsel deemed necessary. The trial court also indicated that the defense would be allowed to take as much time as necessary to proceed in view of the amendment. Defense counsel stated that all that was needed was a few hours. None of the state's witnesses were recalled to testify at the request of defense counsel.
 {¶ 11} Defendant testified at trial, and his testimony indicated the following. On the morning of June 22, 2006, defendant went to the grocery to get milk for the children. When defendant returned to the house after getting the milk, he went back to sleep. Defendant awakened to Ms. Glover yelling at him. She was yelling, "What are you all doing?" (Tr. 470.) Defendant testified that he responded by saying, "What are you talking about?" Id. Ms. Glover took M.D. into another room and defendant knocked on the door and said, "What are you all doing, what is going on?" Id. Ms. Glover eventually said that M.D. said that defendant had touched her. Defendant told Ms. Glover that if she *Page 5 
believed that he had touched M.D. to take his car and drive her to the hospital. Defendant left and then returned, again offering Ms. Glover the keys to his car. Defendant specifically denied inserting his finger in M.D.'s anus or vagina and also specifically denied ever having intercourse with her.
 {¶ 12} At the conclusion of trial, the jury found defendant not guilty of rape as charged in count one of the indictment. The jury found defendant guilty of rape as charged in count two of the indictment, and that the victim was less than ten years of age at the time of the offense. Defendant was sentenced to life in prison and was classified as a sexual predator.
 {¶ 13} Defendant appeals from his conviction and sets forth the following assignments of error for our review:
 1. The Trial Court abused its discretion in allowing the State to amend Count Two of the indictment after the presentation of the State's entire case.
 2. The Defendant was denied effective assistance of counsel when his counsel failed to request that the jury be discharged or request a sufficient continuance after the indictment was amended at the conclusion of the State's case.
 3. The guilty verdict for Rape on Count Two of the indictment was against the manifest weight of the evidence.
 {¶ 14} By his first assignment of error, defendant challenges the trial court's decision to amend the indictment at the conclusion of the state's case. Defendant argues that the trial court's decision to allow the amendment constituted an abuse of discretion and was prejudicial.
 {¶ 15} Pursuant to Crim. R. 7(D), a court may, before, during, or after a trial, amend an indictment due to any variance with the evidence, provided no change is made in the *Page 6 
name or identity of the crime charged. If any amendment is made to the substance of the indictment, the defendant is entitled to a discharge of the jury upon motion, if a jury has been impaneled, and to a reasonable continuance, "unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury." Id.
 {¶ 16} A trial court's decision to permit the amendment of an indictment is reviewed under an abuse-of-discretion standard. State v.Smith, Franklin App. No. 03AP-1157, 2004-Ohio-4786, at ¶ 10. The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, when the name or identity of the crime charged is not changed by the amendment, a defendant on appeal must show that the amendment prejudiced his defense for there to be reversible error.Smith, supra, at ¶ 10.
 {¶ 17} In this case, no change was made in the name or identity of the crime charged. Amending a rape charge from one type of sexual conduct to another type of sexual conduct changes neither the name nor the identity of the rape offense. State v. Abdullah, Franklin App. No. 05AP-1316,2006-Ohio-5412, at ¶ 24; State v. Martin, Franklin App. No. 05AP-818,2006-Ohio-2749, at ¶ 9. Because the name or identity of the crime was not changed, the issue resolves to whether the defendant was misled or prejudiced by the variance reflected in the amendment, thereby entitling him to the due process protections afforded by Crim. R. 7(D).Abdullah, at ¶ 24. *Page 7 
 {¶ 18} Defendant argues that his counsel was prepared to defend the case under one theory, but the change in the indictment permitted the case to proceed on a different factual allegation. Defendant also argues that he was prejudiced because the change in the indictment rendered as ineffectual his trial counsel's cross-examinations of key witnesses. In support of this argument, defendant claims that his questioning of M.D. and Ms. Glover would have been different and would have considered how the victim was positioned, based on the allegation of digital vaginal penetration. Defendant suggests that his counsel's ability to attack, via cross-examination, the credibility of Ms. Glover and M.D. was hindered by the amendment of the indictment. These arguments are unpersuasive.
 {¶ 19} We first address defendant's contention that his ability to assert his theory in defense was undermined because of the amendment. Defendant's defense in this case essentially was that he did not engage in any sexual conduct with the victim, and that he was sleeping when the conduct alleged in count two occurred. This defense does not differentiate between body parts of the victim; defendant categorically denied inappropriately touching M.D. Furthermore, defendant's counsel specifically asked him at trial whether he ever inserted his finger in M.D.'s vagina, which he denied. Therefore, we find that defendant's ability to assert his theory in defense was not prejudiced by the amendment to the indictment.
 {¶ 20} Additionally, we find as unconvincing defendant's argument that his counsel's ability to attack the credibility of Ms. Glover and M.D. was hindered by the change in the indictment. Defense counsel attempted to impeach M.D. by asking her questions related to Ms. Saxbe's report, which indicates that M.D. told the social worker *Page 8 
that defendant put his finger in her butt. Also, defense counsel questioned Ms. Glover as to whether she could actually see defendant touching M.D. while they were on the bed. Ms. Glover recognized that, even though she saw movement near M.D.'s vaginal area, she could not see directly what was occurring under the blanket. Moreover, defense counsel was provided the opportunity to have any or all witnesses recalled to testify. Thus, if defendant's trial counsel believed that asking more questions of M.D. and/or Ms. Glover about the body part involved, or M.D.'s positioning at the time of the alleged offense on June 22, 2006, was strategically appropriate and permitted by the rules of evidence, defendant's counsel could have sought to ask those questions.
 {¶ 21} Lastly, defendant claims that the change in the indictment was significant insofar as it concerned the availability of physical evidence. Defendant asserts that he was prejudiced because his counsel cross-examined the physician based on the initial indictment, not based on the indictment as amended. This argument is unpersuasive because the testimony indicated that a rape kit was not used in connection with the physical examination because digital penetration was alleged. We see no reason why that rationale would have been different if the allegation was digital anal penetration or digital vaginal penetration.
 {¶ 22} For these reasons, we overrule defendant's first assignment of error.
 {¶ 23} Defendant's second assignment of error alleges ineffective assistance of counsel. In order to obtain reversal of a conviction based upon ineffective assistance of counsel, a defendant must satisfy the two-prong test set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052. Pursuant to Strickland, defendant must first demonstrate that his trial counsel's performance was deficient. In this regard, a court *Page 9 
reviewing an ineffective assistance of counsel claim must determine whether, under the circumstances, the acts or omissions were "outside the wide range of professionally competent assistance." Id. at 690.
 {¶ 24} Second, in order for defendant to establish ineffective assistance of trial counsel, he must demonstrate that the deficient performance prejudiced him. This requires defendant to show "that counsel's errors were so serious as to deprive defendant of a fair trial, a trial whose result is reliable." Id. at 687. In other words, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 {¶ 25} Defendant argues that his trial counsel was deficient in not requesting that the jury be discharged after the amendment to the indictment, in not recalling any witnesses after the amendment, and in not requesting a reasonable continuance. In defendant's view, these deficiencies materially prejudiced him at trial.
 {¶ 26} Although defendant argues that his counsel should have asked for a longer continuance, he does not explain why it was outside the wide range of professionally competent assistance not to seek a continuance beyond what was requested. Defendant's counsel could have reasonably concluded that additional time, beyond what was requested, was unnecessary and would not benefit defendant.
 {¶ 27} In arguing that his trial counsel should have recalled witnesses, defendant focuses on his counsel's decision not to have M.D. or Ms. Glover recalled as witnesses. Defendant claims that M.D.'s physical position necessarily would have been different for defendant to have committed the act alleged in the amended indictment verses what was *Page 10 
alleged in the original indictment, and that this difference required his counsel to further question M.D. and Ms. Glover. This argument is unavailing.
 {¶ 28} As noted above, the defense theory was not contingent on the specific body part alleged to have been touched by defendant. The defense theory was based on the claim that defendant did not engage in any sexual conduct with the victim and was asleep at the time of the offense alleged in count two of the indictment. Moreover, although defendant speculates that further questioning of M.D. and Ms. Glover would have been beneficial to his case, we note that his counsel had already attempted to impeach M.D.'s credibility on the basis of what she allegedly told the social worker concerning what body part was involved, and his counsel asked Ms. Glover certain questions that emphasized her inability to actually see what was occurring under the blanket on the bed. Therefore, we find that the decision not to have any witnesses recalled was reasonable under the circumstances and well within the professional judgment of defendant's trial counsel.
 {¶ 29} Furthermore, even if defense counsel had moved for a discharge of the jury, it would not have been an abuse of discretion for the trial court to have denied such a motion because, under the circumstances, defendant was not misled or prejudiced by the amendment to the indictment.
 {¶ 30} Accordingly, we overrule defendant's second assignment of error.
 {¶ 31} Defendant's third assignment of error alleges that his conviction for rape was against the manifest weight of the evidence. Although defendant does not separately allege, by an assignment of error, that his conviction was not supported by sufficient evidence, he does identify sufficiency of the evidence as an issue presented for review. In the interest of justice, we will address both issues in this appeal. *Page 11 
 {¶ 32} In determining the sufficiency of the evidence, an appellate court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Also, "individual pieces of evidence, insufficient in themselves to prove a point, may in cumulation prove it. The sum of an evidentiary presentation may well be greater than its constituent parts."Bourjaily v. United States (1987), 483 U.S. 171, 179-180,107 S.Ct. 2775. Whether the evidence is legally sufficient to sustain a verdict is a question of law, not fact. State v. Thompkins (1997),78 Ohio St.3d 380, 386.
 {¶ 33} When assessing whether a conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and ultimately determine "`whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" Id. at 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus. The jury is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections, and use those observations in weighing the credibility of the testimony. State v.Wright, Franklin App. No. 03AP-470, 2004-Ohio-677, at ¶ 11. *Page 12 
Furthermore, "`[t]he discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" Thompkins, at 387, quotingMartin, supra, at 175.
 {¶ 34} Defendant was convicted of committing rape, in violation of R.C. 2907.02, which provides in pertinent part that "[n]o person shall engage in sexual conduct with another who is not the spouse of the offender * * * when * * * [t]he other person is less than thirteen years of age, whether or not the offender knows the age of the other person." R.C. 2907.02(A)(1)(b).
 {¶ 35} M.D. testified that defendant, who was married to her mother, inserted his finger in her vagina when she was eight years old. This testimony at trial was legally sufficient to convict defendant of rape as charged in count two of the amended indictment. Most simply, this testimony, if believed, established the essential elements of the offense of rape as alleged in count two of the indictment.
 {¶ 36} Next, we address defendant's argument that his conviction was against the manifest weight of the evidence. Defendant contends that the jury lost its way in finding him guilty of rape. In his view, the greater amount of credible evidence supported an acquittal. Defendant argues that inconsistencies in M.D.'s testimony, combined with the lack of physical evidence, as well as the existence of animosity between Ms. Glover and defendant, demonstrate that the conviction was against the manifest weight of the evidence.
 {¶ 37} At trial, defendant denied M.D.'s allegation that he inserted his finger in her vagina. The social worker testified that M.D. indicated to her that defendant inserted his finger in her butt. Although Ms. Glover testified that she saw movement near M.D.'s *Page 13 
vaginal area, she testified that she could not actually see what was occurring under the blanket on the bed when she saw M.D. and defendant. Also, there was evidence that defendant and Ms. Glover were in the midst of a divorce case, involving custody issues, at the time of trial.
 {¶ 38} As outlined above, the jury, as the trier of fact, was charged with assessing the credibility of the witnesses. It was also within the province of the jury to determine the appropriate weight to be given to the testimony and to resolve evidentiary inconsistencies. As an appellate court, we give the trier of fact's decisions on credibility and weight great deference. See State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28. Obviously, the jury believed M.D.'s testimony that defendant inserted his finger in her vagina, and rejected defendant's denial of that allegation. Although M.D.'s alleged statement to the social worker was inconsistent as to the body part involved, this inconsistency did not preclude the jury from giving weight to her testimony at trial as to what body part was involved. Additionally, the jury could have reasonably considered the existence of ill-will between defendant and Ms. Glover in assessing credibility and still find M.D.'s testimony credible.
 {¶ 39} Moreover, we find as unpersuasive defendant's argument that the lack of physical evidence weighs against the jury's determination. The jury could have reasonably concluded that the lack of physical evidence of rape was not significant because the allegation was of digital penetration and there was testimony that the use of a rape kit to collect possible physical evidence was not necessary under such circumstances. Also, the physician who examined M.D. testified that the normalcy of the *Page 14 
genital examination was not inconsistent with the allegation of sexual contact because a normal examination does not negate the possibility of sexual assault or abuse.
 {¶ 40} In the final analysis, the issue raised by defendant's third assignment of error is not whether there was evidence that weighed against finding defendant guilty of rape; the issue is whether the evidence weighed heavily against the conviction so as to demonstrate that the jury clearly lost its way in rendering a guilty verdict. After reviewing the record, we conclude that defendant's conviction for rape was not against the manifest weight of the evidence. Consequently, we overrule defendant's third assignment of error.
 {¶ 41} Having overruled all three of defendant's assignments of error, we affirm the
judgment of the Franklin County Court of Common Pleas.
Judgment affirmed.
SADLER and T. BRYANT, JJ., concur.
T. BRYANT, J., retired of the Third Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.
[1] To protect her identity, we will refer to the victim by her initials. *Page 1